PER CURIAM.
Bugs “R” Us, LLC (“BRU”), appeals from the Baldwin Circuit Court’s denial of its motion to compel arbitration in an action filed by Autumn Willard McCants against BRU alleging negligent and/or wanton termite inspection of a house she purchased. We reverse the judgment of the trial court and remand the case.
I. Facts
According to McCants, on November 6, 2014, she entered into an agreement with Adrian Johns and Myra Johns to purchase the property and residence located at 705 East Fifth Street in Bay Minette (“the property”). On January 13, 2015, BRU issued an “Official Alabama Wood Infestation Inspection Report” (“WIIR”), which indicated that an inspection had revealed no visible evidence of active or previous infestation of various organisms, including powder-post—wood-boring—beetles. The WIIR was signed by the BRU agent who performed the inspection on January 13, 2015. The document states that “[t]his report ... must be signed by the buyer [and] a legible copy of this signature page must be returned to the inspecting company by the person ordering the inspection.” The WIIR did not contain an arbitration clause. The WIIR is signed by McCants and dated January 16, 2015. McCants alleges that the Johnses paid for the WIIR inspection and report.
Also on January 13, 2015, BRU issued a “Termite Damage Protection Agreement” (“the termite contract”) for termite-control and protection services. The termite con *915 tract identifies McCants as the “customer.” McCants alleges that the Johnses also paid for the termite contract. The termite contract states that it is “[e]ffective with the date of initial treatment for one year thereafter.” The date of initial treatment, as indicated in the WIIR, was January 13, 2015. The termite contract is signed by a BRU representative and the signature is dated January 13, 2015. It is undisputed that the termite contract is also signed by McCants and that her signature is dated March 6, 2015. Just above the signature lines, the termite contract states: “The terms and conditions on the reverse side of this agreement including the mandatory arbitration agreement are part of this agreement.”
The reverse side of the termite contract contains the following arbitration clause:
“7. Mandatory Arbitration: Purchaser and Bugs ‘R’ Us agree that any claim, dispute or controversy (‘claim’) between them or against the other or employees, agents, or assigns of the other, and any claim arising from or relating to this agreement or the relationships that result from the agreement, including but not limited to any tort or statutory claim, shall be resolved by neutral binding arbitration by the American Arbitration Association, under the rules of the AAA in effect at the time the claim is filed (‘AAA rules’).... The decision of the arbitration shall be final and binding resolution of the claim. This arbitration agreement is made pursuant to a transaction involving interstate 'commerce and shall be governed by the federal arbitration act. 9 U.S.C. sections 1-16. Judgment upon the award may be entered in any court having jurisdiction. Neither party shall sue the other party with respect to any matter in dispute between the parties other than for the enforcement of the arbitration agreement or of the arbitrators’ award. The parties understand that they would have had a right or opportunity to litigate disputes through a court and to have a judge or jury decide their case, but they chose to have any disputes decided through arbitration.
“8. Except as limited herein above, Bugs ‘R’ Us and customer understand and agree (1) that each of them is waiving rights to seek remedies in court, including the right to a jury trial .... ”
(Emphasis added.)
On March 6, 2015, McCants closed on the property and obtained a warranty deed from the Johnses. McCants alleges that she closed on the property in reliance upon statements made by BRU in the WIIR. As already noted, on the same date, March 6, 2015, McCants signed the termite contract. McCants alleges that after she moved into the property she discovered that the residence “had a severe infestation of powder post beetles and was severely damaged by that infestation.”
On October 22, 2015, McCants sued BRU in the Baldwin Circuit Court, alleging that BRU negligently and/or wantonly inspected the property and prepared and provided the WIIR, upon which she relied in purchasing the property, and that she subsequently discovered a severe infestation of wood-boring organisms that had caused significant damage to the property.
On January 28, 2016, BRU filed a motion to compel arbitration. BRU attached the termite contract, without any attachment, to its motion, and it submitted an affidavit from the owner of BRU, Robert Urias, who testified that BRU’s business involves interstate commerce. Urias did not mention the termite contract in his affidavit.
McCants filed three responses to BRU’s motion to compel arbitration, two of which are relevant here. In her first response, *916 McCants noted that the front page of the termite contract contains the following sentence: “This agreement is void without an attached completed graph of the premises.” She further observed that the termite contract BRU attached to its motion to compel arbitration did not include a graph of the property. Consequently, McCants argued, the termite contract was void oh its own terms. McCants’s third response included her affidavit, in which she testified that she
“never talked with Bugs R Us or its employees until after closing. Bugs R Us issued the [WIIR] and also the Termite [contract] on 1/13/15 as a result of its dealings with Adrian and Myra Johns. Fifty two (52) days after issuance of the [WIIR] and the Termite [contract], [the Johnses] at closing purchased and paid defendant Bugs R Us for its services in issuing two documents to satisfy a requirement of the sale of the home to [McCants]: $75.00 [WIIR]; and $100.00 termite [contract], I, Plaintiff, was not obligated to and never paid defendant Bugs R Us to issue either the [WIIR] or Termite [contract]. On or about fifty two (52) days after [BRU] issued the termite letter, [I] bought the home on 3/6/2015 from [the Johnses] in reliance upon statements made by [BRU] in its 1/13/2015 [WIIR]. Until' 3/6/2015 after closing, I, Plaintiff, never owned or had any property interest in the home .... [I] denfy] that [I] ever negotiated with, or contracted with, or reached a meeting of the minds with Bugs R Us to issue a [WIIR] and/or a termite [contract]. I never agreed with Bugs R Us about anything. I, Plaintiff, suffered no detriment and had no claim against Bugs R Us on 1/13/15, 1/16/15, or on 3/6/15 until after closing.”
Qn February 15, 2016, BRU filed a reply to McCants’s responses to its motion to compel. BRU attached to its reply an attachment to the termite contract that consisted of a graph of the property and McCants’s signature dated March 6, 2015.
On February 23, 2016, the trial court entered an order that simply stated: “Motion to Compel Arbitration filed by Bugs R Us, LLC, is hereby DENIED.” BRU filed a timely appeal of that order.
II. Standard of Review
“ ‘[T]he standard of review of a trial court’s ruling on a motion to compel arbitration at the instance of either party is a de novo determination of whether the trial judge erred on a factual or' legal issue to the substantial prejudice of the party seeking review. Ex parte Roberson, 749 So.2d 441, 446 (Ala. 1999). Furthermore:
“ ‘A motion to' compel arbitration is analogous to a motion for summary judgment. TranSouth Fin. Corp. v. Bell, 739 So.2d 1110, 1114 (Ala. 1999). The party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and proving that that contract evidences a transaction affecting interstate commerce. Id. “After a motion to" compel ■ arbitration has been made and' supported, the burden is on the non-movant to present evidence that the supposed arbitration agreement is not valid or does not apply to the dispute in question.” ’
“Fleetwood Enters., Inc. v. Bruno, 784 So.2d 277, 280 (Ala. 2000) (quoting Jim Burke Auto., Inc. v. Beavers, 674 So.2d 1260, 1265 n.1 (Ala. 1995) (emphasis omitted)).”
Vann v. First Cmty. Credit Corp., 834 So.2d 751, 752-53 (Ala. 2002) (emphasis omitted).”
III. Analysis
Under the foregoing standard, BRU has the burden of proving the existence of an *917 arbitration agreement and that the contract containing the arbitration agreement evidences a transaction affecting interstate commerce. BRU introduced an arbitration agreement that contains signatures of a BRU representative and McCants, and, through the uncontradicted affidavit testimony of BRU’s owner, BRU demonstrated the relation of the termite contract to interstate commerce.
McCants contends, however, that BRU did not meet its burden of proving the existence of an arbitration agreement because, she says, the termite contract was never introduced into evidence in the trial court. McCants notes that the termite contract was attached to BRU’s motion to compel arbitration but that it was not authenticated in accordance with Rule 44, Ala. R. Civ. P. In other words, BRU failed to present any testimony verifying the authenticity of the termite contract because the only testimony it produced concerned the interstate nature of the transaction underlying the contract. McCants argues that the same is true of the attachment to the termite contract containing a graph of the property that BRU attached to its reply in response to McCants’s opposition to the motion to compel arbitration. Nothing accompanies that document to authenticate it.
To this effect, McCants has filed with this Court a motion to strike BRU’s references to the termite-contract exhibits— defendant’s exhibits A and D—contained in the record. McCants asserts that she “moved the Trial Court orally during Motion to Compel Argument on 2/16/16 to strike Bugs R Us Exhibits A and D (Exhibit D was filed on 2/15/16) and it did.” Therefore, McCants contends, BRU should not be allowed to rely upon those exhibits on appeal.
The difficulty with McCants’s argument, as BRU observes, is that nothing in the record below indicates that McCants moved to strike BRU’s termite-contract exhibits or that the trial court granted such a motion. McCants complains that BRU did not order the transcript of the hearing on BRU’s motion to compel, which she says is the reason the record is devoid of the motion to strike, but BRU asserts that no court reporter was present for that hearing. Even assuming a transcript of the hearing exists, Rule 10(b)(2), Ala. R. App. P., provides that it was McCants’s responsibility to ensure that the transcript was included in the record if she deemed it necessary for the appeal.[1] Without a record- of an objection from McCants in the trial court to BRU’s submission of the termite contract, McCants has waived any infirmity in the evidence.
In Elizabeth Homes, L.L.C. v. Cato, 968 So.2d 1 (Ala. 2007), ah arbitration case that involved a similar objection to a contract ’ that contained an arbitration clause, this Court explained:
“Rule 56(e), Ala. R. Civ. P., generally requires that ‘[sjworn or certified copies’ of documents referred to in an affidavit offered supporting or opposing a motion for a summary judgment be attached to the affidavit.[2] However, if an affidavit or the documents attached to an affidavit fail to comply with this rule, the opposing party must object to the admissibility of the affidavit or the document and *918 move to strike. Ex parte Elba Gen. Hosp. & Nursing Home, Inc., 828 So.2d 308, 312-13 (Ala. 2001) (noting that a party must object to evidence submitted in support of a motion for a summary judgment that does not comply with Rule 56(e), Ala. R. Civ. P.); Chatham v. CSX Tranap., Inc., 613 So.2d 341, 344 (Ala. 1993) (‘A party must move the trial court to strike any nonadmissible evidence that violates Rule 56(e). Failure to do so waives any objection on appeal and allows this Court to consider the defective evidence.’). The copy of the purchase agreement submitted with Flanagan’s affidavit was not a certified copy. The Catos, however, did not object to or move to strike the purchase agreement when it was filed with Flanagan’s affidavit. Therefore, they waived any objection based on improper authentication of the purchase agreement. See Berry Mountain Mining Co. v. American Res. Ins. Co., 541 So.2d 4, 4-5 (Ala. 1989) (holding that a nonmovant who failed to move to strike unauthenticated documents submitted in support of a motion for a summary judgment waived objection on appeal as to the admissibility of the documents).
[[Image here]]
Id. at 4-5 (second emphasis added).
Because we have no record of MeCants’s objecting to the admissibility of the termite contract, we must consider it to be part of the record evidence. Accordingly, McCants’s motion to strike BRU’s references in its briefs to the exhibits to the termite contract is denied. We conclude that BRU has carried its burden of establishing the existence of a contract calling for arbitration and proving that that contract evidences a transaction affecting interstate commerce.
The burden shifts to McCants to demonstrate that the supposed arbitration agreement is not valid or that it does not apply to this dispute. McCants presents arguments on both grounds. She argues that the arbitration agreement is not valid because it is void by its own terms in that a graph of the property is not attached to it. She argues that she is not the “purchaser” designated in the arbitration provision and so she is not bound under the language of that provision. She also contends that § 2 of the Federal Arbitration Act required enforcement of arbitration claims arising only out of the contract that contains the arbitration clause and that her claims arise out of the WIIR, not the termite contract. McCants relies upon Orkin Exterminating Co. v. Larkin, 857 So.2d 97 (Ala. 2003), for support of this latter argument.
Whatever merit those arguments may or may not have, under the arbitration provision in the termite contract it is not this Court’s responsibility to make determinations on those issues. This Court previously has explained:
“ ‘[T]he issue whether a party has waived the right to arbitration by its conduct during litigation is a question for the court and not the arbitrator.’ Ocwen Loan Servicing, LLC v. Washington, 939 So.2d 6, 14 (Ala. 2006). However, the general rule that the court and not the arbitrator decides whether a party has waived the right to arbitration has an exception: issues typically decided by the court will be decided by the arbitrator instead when there is “ ‘clear and unmistakable evidence’ ” of such an agreement in the arbitration provision. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 *919 L.Ed.2d 985 (1995) (quoting AT & T Techs., Inc. v. Communications Workers of America, 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (alterations omitted)); see also Marie v. Allied Home Mortg. Corp., 402 F.3d 1, 14 (1st Cir. 2005) (citing First Options).”
Anderton v. The Practice-Monroeville, P.C., 164 So.3d 1094, 1098 (Ala. 2014) (footnote omitted and emphasis added). In An-derton, this Court determined that the incorporation into the arbitration provision of the commercial arbitration rules of the American Arbitration Association (“the AAA”) constituted clear and unmistakable evidence of the parties’ intent to submit issues of arbitrability to the arbitrator. See 164 So.3d at 1101-02. This Court reiterated this conclusion in Federal Insurance Co. v. Reedstrom, 197 So.3d 971, 976 (Ala. 2015):
“Like the arbitration agreement in Anderton [v. The Practice-Monroeville, P.C., 164 So.3d 1094 (Ala. 2014)], the arbitration provision in this case provides that any arbitration proceedings will be conducted ‘pursuant to the then-prevailing commercial arbitration rules of the American Arbitration Association.’ The relevant commercial arbitration rule, Rule 7(a), expressly provides, in its current form, that ‘[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.’ See Chris Myers Pontiac-GMC, Inc. v. Perot, 991 So.2d 1281, 1284 (Ala. 2008) (noting that we may take judicial notice of the commercial arbitration rules of the American Arbitration Association even when they do not appear in the record). Thus, pursuant to Rule 7(a), both the question of whether Federal Insurance has waived its right to enforce the arbitration provision and the question of whether the arbitration provision may be enforced against a nonsignatory such as Reedstrom have been delegated to the arbitrators, and the arbitrators, not the trial court, must decide those threshold issues.”
The arbitration provision in this case provides, in pertinent part: “[A]ny claim ... shall be resolved by neutral binding arbitration by the American Arbitration Association, under the rules of the AAA in effect at the time the claim is filed ....” Rule 7(a) of the AAA Commercial Rules provides: “The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or the arbitra-bility of any claim or counterclaim.” Rule 7(b) provides, in pertinent part: “The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part.”[2] Therefore, the arbitration provision in this case shows an intent by the parties to submit issues of arbitrability to the arbitrator.[3]
We conclude that BRU has met its burden of establishing the existence of an arbitration contract between the parties and that that contract evidences a transaction affecting interstate commerce. Furthermore, the arbitration provision dictates that the issues McCants has raised about the applicability of the Federal Arbi *920 tration Act to this dispute, whether her claims are subsumed under the arbitration provision, and whether she is bound by the arbitration provision must be submitted to the arbitrator for determination. Therefore, the trial court’s order denying BRU’s motion to compel arbitration is due to be reversed.
IV. Conclusion
McCants’S'motion to strike'BRU’s references to exhibits in the record is denied. BRU has met its burden in supporting its motion to compel arbitration, and the arbitration provision dictates that' issuesof arbitrability must be submitted to the arbitrator. The trial court’s order is reversed, and the case is remanded for proceedings consistent with this opinion.
MOTION TO STRIKE DENIED; REVERSED AND REMANDED.
Stuart, Bolin, Parker, Shaw, Main, Wise, and Bryan, JJ., concur.
Murdock, J., dissent's.

. Rule 10(b)(2), Ala. R, App. P., provides, in pertinent part:
"If the appellee deems that other parts of the proceedings should be included or that the entire proceeding should appear in the reporter's transcript, the appellee shall, within 7 days (1 week) after receipt of the transcript purchase order, pay the court reporter the estimated cost of transcribing that part of the proceedings the appellee has deemed nec- * essary to be included in1 the record .,.. ”

“2This Court applies, by analogy, the practice under Rule 56, Ala. R. Civ. P., dealing with summary-judgment motions, to motions to compel arbitration. Ex parte Greenstreet, Inc., 806 So.2d 1203, 1207 (Ala. 2001).”

. See Chris Myers Pontiac-GMC, Inc. v. Perot, 991 So.2d 1281, 1284 (Ala. 2008) (noting that this Court may take judicial notice of the commercial arbitration rules of the AAA even when they do not appear in the record).

. We have not been asked to revisit our holdings in Anderton and Reedstrom,