PER CURIAM.
Managed Health Care Administration, Inc. ("MHCA"), and Alabama Psychiatric Services, P.C. ("APS") (hereinafter collectively referred to as "the plaintiffs"), appeal the Jefferson Circuit Court's denial of their motion to compel Blue Cross and Blue Shield of Alabama ("Blue Cross") to arbitrate MHCA's and APS's claims against Blue Cross and Blue Cross's counterclaims against the plaintiffs. We reverse and remand.
Facts and Procedural History
This case involves several contracts between various parties, some of whom are not parties to this appeal. Generally, beginning in 1986, Blue Cross contracted with APS, a subsidiary of MHCA, to provide mental-health services to Blue Cross's insureds. In 1991, Blue Cross's contract with APS was transferred to MHCA. In 1995, Blue Cross and MHCA entered into a new contract in which MHCA agreed to provide or arrange for mental-health services to Blue Cross's insureds ("the 1995 contract").
In 2006, Blue Cross and MHCA entered into yet another contract in which MHCA agreed to provide or arrange for mental-health services to Blue Cross's insureds ("the 2006 contract"). The 2006 contract included the following arbitration provision:
"Any disputes arising out of or relating to this Agreement shall be submitted to *488 Arbitration in accordance with the rules of the American Arbitration Association then in effect, and the award rendered by the arbitrators shall be binding as between the parties and judgments on such award may be entered in any court having jurisdiction thereof."
The affidavit testimony of Edward Harris, Blue Cross's vice president of business development, states: "In late 2012, Blue Cross decided to replace MHCA, as its behavioral health benefits management vendor, with New Directions Behavioral Health, L.L.C." To that end, on September 23, 2013, Blue Cross and New Directions Behavioral Health, L.L.C. ("New Directions"), entered into a contract in which New Directions agreed to "arrange for the provision of all Covered Services to Members in accordance with the terms and conditions set forth in this Agreement" ("the Blue Cross-New Directions 2013 contract"). The Blue Cross-New Directions 2013 contract recognizes that Blue Cross "has utilized for years and is currently using [MHCA] and its subsidiary [APS] to provide its Members with behavioral health and substance use treatment." The Blue Cross-New Directions 2013 contract delegates to New Directions certain of Blue Cross's obligations to its insureds. In turn, the Blue Cross-New Directions 2013 contract permits New Directions to sub-delegate those delegated duties to a third party. The affidavit testimony of Harris states that Blue Cross asked New Directions to sub-delegate to MHCA certain of New Directions' delegable duties. The Blue Cross-New Directions 2013 contract includes an extensive dispute-resolution process that applies to "any dispute between [Blue Cross] and New Directions arising out of or related to this Agreement or the Parties' rights under this Agreement," which includes the following arbitration provision:
"[T]he Parties will refer the matter to binding arbitration pursuant to the Commercial Rules of the American Arbitration Association ('AAA'). Each Party will select one arbitrator and a third arbitrator will be selected by the two designated arbitrators. If there is no agreement on the third arbitrator, the *489 President of the AAA will select the third arbitrator. A majority decision by the arbitrators and umpire will be final and binding on both Parties. Judgment may be entered upon the final decision of the arbitrators in any court having jurisdiction. The cost of the arbitration will be paid as determined by the arbitrators."
On October 1, 2013, pursuant to the authority granted it under the Blue Cross-New Directions 2013 contract and at the request of Blue Cross, New Directions entered into a contract which MHCA in which New Directions sub-delegated to MHCA certain of New Directions' obligations under the Blue Cross-New Directions 2013 contract ("the New Directions-MHCA 2013 contract"). Specifically, New Directions sub-delegated to MHCA its responsibility to manage the network of service providers that had been used to provide mental-health services to Blue Cross's insureds since 1986. The New Directions-MHCA 2013 contract includes an extensive dispute-resolution process that applies to "any dispute arising out of or related to this Agreement or the Parties' rights under this Agreement," which includes the following arbitration provision:
"[T]he Parties will refer the matter to binding arbitration pursuant to the Commercial Rules of the American Arbitration Association ('AAA'). Each Party will select one arbitrator and a third arbitrator will be selected by the two designated arbitrators. If there is no agreement on the third arbitrator, the President of the AAA will select the third arbitrator. A majority decision by the arbitrators and umpire will be final and binding on both Parties. Judgment may be entered upon the final decision of the arbitrators in any court having jurisdiction. The cost of the arbitration will be paid as determined by the arbitrators."
Harris's affidavit testimony states that, "once the [Blue Cross-New Directions 2013 contract] and the [New Directions-MHCA 2013 contract] were executed, Blue Cross and MHCA terminated the [1995 contract and the 2006 contract] by mutual agreement."
Thereafter, a disagreement arose concerning the amount of compensation MHCA was to receive for its services. On May 15, 2015, the plaintiffs sued Blue Cross and several fictitiously named defendants alleging fraudulent misrepresentation, fraudulent suppression, breach of an implied contract, and promissory estoppel; the plaintiffs amended their initial complaint on November 4, 2015. The plaintiffs made their first discovery request of Blue Cross in August 2015. Blue Cross did not produce the requested Blue Cross-New Directions 2013 contract until March 23, 2016.
On April 1, 2016, Blue Cross filed an amended answer to the plaintiffs' complaint and counterclaims against MHCA alleging unjust enrichment and breach of the 2006 contract. On May 16, 2016, MHCA filed a motion to dismiss Blue Cross's counterclaims.
On June 8, 2016, the plaintiffs filed with the American Arbitration Association ("AAA") a demand for arbitration based on the arbitration provisions in the 2006 contract and in the New Directions-MHCA 2013 contract. On June 9, 2016, the plaintiffs filed in the circuit court a motion to stay the proceedings in the circuit court and to compel arbitration of all the pending claims and counterclaims based on the arbitration provisions in the 2006 contract and in the New Directions-MHCA 2013 contract. The plaintiffs argued in their motion to compel arbitration that
"the full extent of the contractual relationship between [Blue Cross] and New Directions is now known and it is clear that [Blue Cross] is bound to the terms of the [New Directions-MHCA 2013 contract] (including the [alternative dispute resolution] provision) even though it is not a signatory to the agreement."
On June 22, 2016, Blue Cross filed a motion in opposition to the plaintiffs' motion to compel arbitration. Blue Cross asserted the following relevant arguments: that the circuit court, not the arbitrator, had the authority to determine whether a contract requiring arbitration between the parties exists; that Blue Cross "is not bound by the [New Directions-MHCA 2013 contract and that], therefore, no contract exists that requires Blue Cross to arbitrate"; that the plaintiffs waived their right to arbitration by substantially invoking the litigation process; and that the arbitration provision in the 2006 contract "is not applicable to Blue Cross'[s] counterclaim because that provision did not survive the contract's termination." The plaintiffs argued that the issues raised by Blue Cross were for the arbitrator to decide, not the circuit court.
On July 1, 2016, Blue Cross filed a motion for a preliminary injunction requesting that the circuit court "prohibit [the plaintiffs] from further prosecuting the arbitration proceeding they filed against Blue Cross until the arbitrability of the claims asserted therein is finally decided as to Blue Cross." On July 5, 2016, Blue Cross amended its motion to request that the circuit court enter a permanent injunction against the plaintiffs.
*490 On July 8, 2016, following a hearing, the circuit court entered the following order denying the plaintiffs' motion to compel arbitration:
"[Blue Cross] did not sign the [New Directions-MHCA 2013 contract], which contains an arbitration clause that, by its terms, applies only to MHCA and New Directions. Gadsden Budweiser Distrib. Co. v. Holland, 807 So.2d 528, 530 (Ala. 2001). [Blue Cross] is not claiming any benefit under that agreement. Custom Performance, Inc. v. Dawson, 57 So.3d 90, 97-98 (Ala. 2010). [Blue Cross] did sign a now terminated contract, the 2006 ... [c]ontract, which contained an arbitration clause[;] however, that clause did not survive termination. Even if it did, [the] plaintiffs' claims do not arise out of or relate to that agreement. Moreover, [the] plaintiffs, who filed this action in this court instead of with [the] AAA, ... have taken substantial amounts of discovery, including a number of depositions, and waited until after the discovery cutoff, two days before their deadline to disclose experts, four months before the trial date, and after certain adverse rulings to seek to arbitrate their claims. This constituted a substantial invocation of the litigation process and a waiver of any right to arbitrate. Paw Paw's Camper City, Inc. v. Hayman, 973 So.2d 344, 348-49 (Ala. 2007). After carefully observing the live testimony of [Blue Cross's] witness, Michael Velezis, regarding, among other things, the extent to which [the] plaintiffs have invoked litigation in this forum, and the lack of any facts that would support a finding that Blue Cross is bound as a nonsignatory to the [New Directions-MHCA 2013 contract], and considering the other evidence in the record, the court finds his testimony credible and is persuaded that it would prejudice [Blue Cross] to shift this case to arbitration at this time. [Blue Cross] is not required to arbitrate [the] plaintiffs' claims or [Blue Cross's] counterclaims."
The circuit court also granted Blue Cross's request for a permanent injunction. The plaintiffs appealed.
Standard of Review
"Our standard of review of a ruling denying a motion to compel arbitration is well settled:
" ' "This Court reviews de novo the denial of a motion to compel arbitration. Parkway Dodge, Inc. v. Yarbrough, 779 So.2d 1205 (Ala. 2000). A motion to compel arbitration is analogous to a motion for a summary judgment. TranSouth Fin. Corp. v. Bell, 739 So.2d 1110, 1114 (Ala. 1999). The party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and proving that the contract evidences a transaction affecting interstate commerce. Id.'[A]fter a motion to compel arbitration has been made and supported, the burden is on the non-movant to present evidence that the supposed arbitration agreement is not valid or does not apply to the dispute in question.' Jim Burke Automotive, Inc. v. Beavers, 674 So.2d 1260, 1265 n. 1 (Ala. 1995) (opinion on application for rehearing)." '
" Elizabeth Homes, L.L.C. v. Gantt, 882 So.2d 313, 315 (Ala. 2003) (quoting Fleetwood Enters., Inc. v. Bruno, 784 So.2d 277, 280 (Ala. 2000) )."
SSC Montgomery Cedar Crest Oper. Co., LLC v. Bolding, 130 So.3d 1194, 1196 (Ala. 2013).
Further, we review the circuit court's entry of a permanent injunction de novo.
*491 Sycamore Mgmt. Grp., LLC v. Coosa Cable Co., 42 So.3d 90, 93 (Ala. 2010) (citing TFT, Inc. v. Warning Sys., Inc., 751 So.2d 1238, 1241 (Ala. 1999) ).
Discussion
The plaintiffs argue that there are two agreements calling for arbitration of the claims and the counterclaims. The plaintiffs argue that the arbitration provisions in the 2006 contract and the New Directions-MHCA 2013 contract require that the parties arbitrate their claims. The circuit court determined that neither of the arbitration provisions required Blue Cross to arbitrate the claims at issue in this case.
The plaintiffs argue that the arbitration provision in the 2006 contract requires that the claims between the parties be arbitrated. The plaintiffs have demonstrated the existence of the 2006 contract and that it evidences transactions affecting interstate commerce. The burden of proof then shifted to Blue Cross to present evidence that the arbitration provision in the 2006 contract does not apply to the dispute between the plaintiffs and Blue Cross. The circuit court denied the plaintiffs' motion to compel arbitration based on the arbitration provision in the 2006 contract because the circuit court found that the arbitration provision "did not survive termination" of the 2006 contract. The circuit court further found that, even if the plaintiffs did have a right to arbitration, the plaintiffs waived that right by substantially invoking the litigation process.
On appeal, the plaintiffs argue that the circuit court erred in determining the above issues of arbitrability because the parties agreed in the 2006 contract that such issues would be decided by an arbitrator. The plaintiffs are correct.
In Ex parte Shamrock Food Service, Inc., 514 So.2d 921 (Ala. 1987), a case relied upon by the plaintiffs, the question before this Court was whether a dispute over the termination of an agreement between two parties was within the scope of the agreement's arbitration provision. The arbitration provision at issue in Ex parte Shamrock stated:
" 'In the event of any dispute(s) in regard to matters stated herein, which may not be resolved mutually between the parties hereto, such matters shall be referred to a Board of Arbitration.... If the two so named cannot agree on a third member, the Director of the Federal Mediation and Conciliation Service shall be requested to name the third member.... The decision of the majority of the members of the Board of Arbitration shall be final and binding upon both parties to the Agreement.' "
514 So.2d at 921. This Court held: "Clearly, under the broad provisions of the arbitration clause, the issue of whether the contract has been terminated must be submitted to arbitration." Id. at 922. Essentially, this Court determined that the parties agreed that such an arbitrability question was to be decided by the arbitrator, not the circuit court.
In the present case, the arbitration provision in the 2006 contract provides, in pertinent part: "Any disputes arising out of or relating to this Agreement shall be submitted to Arbitration in accordance with the rules of the American Arbitration Association then in effect ...." Concerning similar language in an arbitration provision, this Court stated in Bugs "R" Us, LLC v. McCants, 223 So.3d 913, 919 (Ala. 2016):
"In Anderton [v. The Practice-Monroeville, P.C., 164 So.3d 1094 (Ala. 2014) ], this Court determined that the incorporation into an arbitration provision of the commercial arbitration rules of ... the AAA[ ] constituted clear and unmistakable evidence of the parties' intent to submit issues of arbitrability to the arbi *492 trator. See 164 So.3d at 1101-02. This Court reiterated this conclusion in Federal Insurance Co. v. Reedstrom, 197 So.3d 971, 976 (Ala. 2015) :
" 'Like the arbitration agreement in Anderton [v. The Practice-Monroeville, P.C., 164 So.3d 1094 (Ala. 2014) ], the arbitration provision in this case provides that any arbitration proceedings will be conducted "pursuant to the then-prevailing commercial arbitration rules of the American Arbitration Association." The relevant commercial arbitration rule, Rule 7(a), expressly provides, in its current form, that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." See Chris Myers Pontiac-GMC, Inc. v. Perot, 991 So.2d 1281, 1284 (Ala. 2008) (noting that we may take judicial notice of the commercial arbitration rules of the American Arbitration Association even when they do not appear in the record). Thus, pursuant to Rule 7(a), ... the question of whether [the defendant] has waived its right to enforce the arbitration provision ... ha[s] been delegated to the arbitrators, and the arbitrators, not the trial court, must decide th[i]s[ ] threshold issue[ ].'
"The arbitration provision in this case provides, in pertinent part: '[A]ny claim ... shall be resolved by neutral binding arbitration by the American Arbitration Association, under the rules of the AAA in effect at the time the claim is filed ....' Rule 7(a) of the AAA Commercial Rules provides: 'The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or the arbitrability of any claim or counterclaim.' Rule 7(b) provides, in pertinent part: 'The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part.' Therefore, the arbitration provision in this case shows an intent by the parties to submit issues of arbitrability to the arbitrator."
(Emphasis added; footnotes omitted.)
As is made clear in Bugs "R" Us, under the broad language in the arbitration provision in the 2006 contract, the arbitrability issues whether the arbitration provision in the 2006 contract has been terminated and whether MHCA waived its right to arbitration are issues for the arbitrator, not the circuit court. See also Polaris Sales, Inc. v. Heritage Imports, Inc., 879 So.2d 1129, 1133 (Ala. 2003) ("Questions of arbitrability include those relating to the scope, interpretation, and application of the arbitration agreement, Jim Burke Auto., Inc. v. McGrue, 826 So.2d 122, 132 (Ala. 2002), as well as the issue whether a party has waived its right to demand arbitration by 'substantially invok[ing] the litigation process.' Hales v. ProEquities, Inc., [885] So.2d [100], [105] (Ala. 2003)."). The circuit court erred in that it improperly determined issues of arbitrability, which the parties had contractually agreed to submit to an arbitrator.
The plaintiffs also state that the circuit court held that, even if the arbitration provision in the 2006 contract survived the termination of the 2006 contract, the plaintiffs' "claims do not arise out of or relate to that agreement." The plaintiffs argue that this, too, is an issue of arbitrability to be decided by the arbitrator and that the circuit court erred in determining this arbitrability issue. The plaintiffs are correct.
*493 In First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995), the United States Supreme Court concluded that, if parties to a contract agreed to submit the question of arbitrability itself to arbitration, then the arbitrator should decide issues related to that question. As set forth above, the arbitration provision in the 2006 contract specifically incorporates the Commercial Rules of the AAA. Rule 7(a) of the AAA Commercial Rules provides: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." The broad language of Rule 7(a) is clear and unmistakable evidence that the parties agreed that the arbitrator, not the circuit court, would decide issues of jurisdiction and scope of the arbitration provision in the 2006 contract. Therefore, we conclude that the circuit court erred in determining that the parties' claims and counterclaims do not arise out of the 2006 contract; that is an issue for the arbitrator to decide.
In fact, we note that Blue Cross specifically alleges in one of its counterclaims that MHCA breached the 2006 contract. Blue Cross recognizes this fact in its brief and argues that its breach-of-contract counterclaim is the only claim that could possibly arise out of the 2006 contract. Blue Cross then states that it "hereby abandons its counterclaim for breach of the [2006 contract]." Blue Cross's brief, at pp. 68-69. However, as stated above, it is for the arbitrator, not the courts, to determine whether the claims asserted by the parties are within the scope of the 2006 contract. Further, we note that Blue Cross's expressed intention in its brief before this Court to "abandon its counterclaim" does not operate as an actual dismissal of Blue Cross's breach-of-contract counterclaim. See Rule 41(c), Ala. R. Civ. P.
We conclude that the plaintiffs have demonstrated that they have a right to arbitration. The circuit court erred in denying the plaintiffs' motion to compel arbitration, and we reverse the circuit court's judgment denying the plaintiffs' motion to compel arbitration in its entirety. Our conclusion that the plaintiffs are entitled to arbitration of the parties' claims under the arbitration provision in the 2006 contract pretermits discussion of the parties' arguments concerning the arbitration provision in the New Directions-MHCA 2013 contract.[1]
Further, based on its conclusion that the plaintiffs did not have a right to arbitrate the parties' claims, the circuit court granted a permanent injunction enjoining the plaintiffs from arbitrating the parties' claims. Our conclusion that the plaintiffs do have a right to arbitrate the parties' claims removes the basis of the circuit court's permanent injunction. Thus, we also reverse the circuit court's permanent injunction against the plaintiffs.
Conclusion
Based on the foregoing, we reverse the circuit court's judgment and its permanent injunction and remand the matter for the circuit court to enter an order granting the *494 plaintiffs' motion to compel arbitration and staying the proceedings pending the outcome of that arbitration.
REVERSED AND REMANDED.
Stuart, C.J., and Bolin, Shaw, Main, and Bryan, JJ., concur.
Parker and Murdock, JJ., dissent.
Wise and Sellers, JJ., recuse themselves.

Blue Cross argues that the arbitrator cannot consider which contract, the 2006 contract or the New Directions-MHCA 2013 contract, the parties' claims arise under because the circuit court has already determined that all but Blue Cross's breach-of-contract counterclaim arise under the New Directions-MHCA 2013 contract. However, we reverse the entirety of the circuit court's order denying the plaintiffs' motion to compel arbitration. Therefore, upon reversing the circuit court's order, there is no judicial determination of that issue. That is an issue for the arbitrator to decide.