Rel: June 20, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2024-2025

———————————

### SC-2025-0042

———————————

## Rentokil North America, Inc., d/b/a Terminix

### v.

## Colton Turner and Keegan Turner

**Appeal from Houston Circuit Court
(CV-24-900420)**

SHAW, Justice.

Rentokil North America, Inc., d/b/a Terminix ("Terminix"), the

defendant below, appeals from the Houston Circuit Court's order denying

its motion seeking to compel arbitration of the claims asserted against it by the plaintiffs, Colton Turner and Keegan Turner. We reverse and remand.

Facts and Procedural History

Terminix is a Pennsylvania entity registered to provide pest-control services in Alabama. In 2023, Terminix, through its Dothan location, was retained to conduct, in connection with the Turners' contract to purchase a residence in Ozark, an inspection satisfying the seller's duty to provide the Turners a "Wood Destroying Insect Inspection Report" ("the report") on the residence. Specifically, Terminix entered into an agreement ("the inspection agreement"), at the request of the seller, to conduct a visual inspection of the residence for signs of infestation and/or damage by termites (or other wood-destroying organisms).

Thereafter, on November 11, 2023, Terminix conducted its inspection as required by the inspection agreement and provided the report, which identified areas of visible damage in the residence. The report identified both the "Seller," who, the record suggests, paid all the charges associated with the inspection and resulting treatment, and listed Colton Turner as the "Purchaser."

Also on November 11, 2023, Terminix entered into a separate "Property Work Authorization and Service Agreement" ("the service agreement") for related repairs to the residence and also an agreement providing for the installation of a "Subterranean Termite Baiting System" ("the baiting agreement") in the residence. Among its other "terms and conditions," the baiting agreement contained a "mandatory arbitration" provision, providing, in pertinent part:

> "<u>Any</u> claim, dispute or controversy, regarding <u>any contract</u>, tort, statute or otherwise ('Claim') <u>arising out of</u> or relating to this Agreement <u>or the relationships among the parties hereto</u>, shall be resolved by one arbitrator through binding arbitration administered by the American Arbitration Association ('AAA'), under the AAA Commercial or Consumer, as applicable, Rules in effect at the time the Claim is filed ('AAA Rules'). . . . This clause is made pursuant to a transaction involving interstate commerce and shall be governed by the Federal Arbitration Act. ... <u>The arbitrator, and not any federal, state or local court, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, unconscionability, arbitrability, enforceability, or formation of this Agreement, including any claim that all or any part of this Agreement is void or voidable</u>."

(Capitalization omitted; emphasis added.)[1] Both the service agreement

---

[1]The service agreement also contained a provision requiring mandatory arbitration; however, in moving to compel arbitration, Terminix appears to have relied exclusively on the quoted provision in the baiting agreement. See also n.2, infra.

and the baiting agreement, in all relevant locations, again designated, in typeface, Colton Turner as the "Purchaser" and contained an illegible signature beside each such designation. After Terminix's initial treatment of the residence pursuant to the service agreement and the baiting agreement, the Turners, in 2024, paid the required annual renewal fee to renew the baiting agreement.

In September 2024, the Turners sued Terminix alleging that representations Terminix included in the report regarding the scope and location of existing termite damage in the residence were "false" and asserting the following claims: breach of contract, "fraud-misrepresentation," fraudulent suppression, and negligence. In response, Terminix filed a motion seeking to stay the action and to compel the Turners to arbitrate their claims pursuant to the arbitration provision in the baiting agreement. More specifically, Terminix argued that the Turners' claims were subject to arbitration under the Federal Arbitration Act ("the FAA"), 9 U.S.C. § 1 et seq., because, it alleged, the arbitration provision in the baiting agreement both governed those claims and evidenced a transaction involving interstate commerce. Terminix's motion further contended that the baiting agreement

4

indicated that an arbitrator, rather than the courts, would determine any issue of arbitrability.

Although the Turners did not dispute the presence or the general validity of the arbitration provision in the service agreement, on which they appeared to believe Terminix's motion relied, the Turners opposed Terminix's request to compel arbitration. Specifically, they contended that the controversy between the parties and their resulting claims were based exclusively on misrepresentations by Terminix in the report, which -- unlike the subsequently executed service agreement and baiting agreement -- did not contain an arbitration provision. Also according to the Turners, the report on which their claims were based had been provided to them before they renewed, and therefore allegedly assented to, the provisions of the baiting agreement.[2]

---

[2]Terminix interpreted the Turners' renewal of the baiting agreement as their acceptance of its terms. Thus, Terminix contended below that it was immaterial whether the Turners had actually signed the initial baiting agreement containing the arbitration provision. See Orkin Exterminating Co. v. Larkin, 857 So. 2d 97, 101-02 (Ala. 2003) (concluding, even in the absence of the plaintiffs' signatures on a termite agreement containing an arbitration provision that the termite agreement containing the arbitration provision was nonetheless enforceable against them based on external and objective manifestations of mutual assent).

The trial court, without stating the basis of its ruling, ultimately denied Terminix's motion. Terminix appeals.

Standard of Review

"'"[T]he standard of review of a trial court's ruling on a motion to compel arbitration at the instance of either party is a de novo determination of whether the trial judge erred on a factual or legal issue to the substantial prejudice of the party seeking review." Ex parte Roberson, 749 So. 2d 441, 446 (Ala. 1999). Furthermore:

"'"A motion to compel arbitration is analogous to a motion for summary judgment. TranSouth Fin. Corp. v. Bell, 739 So. 2d 1110, 1114 (Ala. 1999). The party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and proving that that contract evidences a transaction affecting interstate commerce. Id. 'After a motion to compel arbitration has been made and supported, the burden is on the non-movant to present evidence that the supposed arbitration agreement is not valid or does not apply to the dispute in question.'"

"'Fleetwood Enters., Inc. v. Bruno, 784 So. 2d 277, 280 (Ala. 2000) (quoting Jim Burke Auto., Inc. v. Beavers, 674 So. 2d 1260, 1265 n.1 (Ala. 1995) (emphasis omitted)).'

6

"Vann v. First Cmty. Credit Corp., 834 So. 2d 751, 752-53 (Ala. 2002)."

Elizabeth Homes, L.L.C. v. Cato, 968 So. 2d 1, 3 (Ala. 2007).

Discussion

Terminix contends that the trial court erred, on several grounds, in failing to compel arbitration. Specifically, it argues that it demonstrated the undisputed existence of a contract both affecting interstate commerce and requiring arbitration of disputes arising from the parties' relationship. It further contends, as it did below, that the arbitration provision in the baiting agreement both incorporates the American Arbitration Association ("the AAA") rules[3] and specifically reserves to the

_____

[3]Terminix's motion explicitly relied on and attached, among other exhibits, a copy of Rule 14 of the AAA Consumer Rules, which provides, in pertinent part: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." See also, e.g., Federal Ins. Co. v. Reedstrom, 197 So. 3d 971, 976 (Ala. 2015) ("[T]he arbitration provision in this case provides that any arbitration proceedings will be conducted 'pursuant to the then-prevailing commercial arbitration rules of the American Arbitration Association.' The relevant commercial arbitration rule, Rule 7(a), expressly provides, in its current form, that '[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.'"), and Performance Builders, LLC v. Lopas, 341 So. 3d

7

arbitrator the right to resolve questions of jurisdiction and arbitrability. We agree and find this issue determinative.

In their response opposing Terminix's motion to arbitrate, the Turners noted that "[w]hether the parties' agreement covers a particular controversy has been deemed a gateway arbitrability question" that is generally reserved for the courts. In this case, however, as Terminix argues, the arbitration provision, which is sufficiently broad to arguably require arbitration of the Turners' claims concerning Terminix's performance under the inspection agreement, both incorporates the AAA rules and specifically retains, for the arbitrator, the right to resolve questions of jurisdiction and arbitrability. In such cases, we have explained:

> "The arbitration provision [at issue] provides that 'any dispute, controversy or claim arising out of or in connection with the [master service] agreement' that cannot otherwise be resolved by the parties must be submitted to the AAA for binding arbitration conducted in accordance with the AAA commercial arbitration rules. Those rules vest the arbitrator with the power '"to rule on his or her own jurisdiction,

1084, 1090 n.8 (Ala. 2021) ("Rules 14(a) and (b) of the AAA Consumer Rules are identical to Rules 7(a) and (b) of the AAA Commercial Rules.").

including any objections with respect to the existence, scope or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."' [Federal Ins. Co. v.] Reedstrom, 197 So. 3d [971] at 976 [(Ala. 2015)] (quoting AAA Commercial Arbitration Rule 7(a)). In CitiFinancial Corp., L.L.C. v. Peoples, 973 So. 2d 332 (Ala. 2007), this Court first considered the effect of an arbitration provision specifically incorporating the AAA commercial arbitration rules in a dispute regarding which party -- a trial court or an arbitrator -- should decide arbitrability issues:

"'In Smith v. Mark Dodge, Inc., 934 So. 2d 375, 379 (Ala. 2006), we stated:

"'"A threshold issue is which forum should decide the question of the scope of the arbitration agreement. In First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995), the United States Supreme Court stated:

"'"'Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, see, e.g., Mastrobuono v. Shearson Lehman Hutton, Inc., [514 U.S. 52, 57 (1995)]; Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985), so the question "who has the primary power to decide arbitrability" turns upon what the parties agreed about that matter.'

9

"'"514 U.S. at 943, 115 S. Ct. 1920. However, the Court warned, '[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is "clea[r] and unmistakabl[e]" evidence that they did so.' 514 U.S. at 944, 115 S. Ct. 1920 (quoting AT & T Techs. v. Communications Workers, 475 U.S. 643, 649, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986)). This Court has similarly required that trial courts order arbitration of the issue of arbitrability when the plain language of the agreement unquestionably shows that the parties agreed to arbitrate the issue of arbitrability. Polaris Sales, Inc. v. Heritage Imports, Inc., 879 So. 2d 1129, 1133-34 (Ala. 2003); and Ex parte Perry, 744 So. 2d 859, 866-67 (Ala. 1999)."

"'The question presented by this case is whether the arbitration provision clearly and unmistakably provides that the arbitrator shall decide arbitrability. The [appellants] argue that incorporation into the arbitration provision of the Commercial Rules of the American Arbitration Association, conferring authority to decide such issues on the arbitrator, evidences such an intent. This Court has not decided whether the incorporation of such rules is sufficient to show the parties' intent to delegate the issue of arbitrability to an arbitrator, but federal courts have so held. In Terminix International Co. v. Palmer Ranch Ltd. Partnership, 432 F.3d 1327, 1332 (11th Cir. 2005), the United States Court of Appeals for the Eleventh Circuit stated:

10

"'"[T]he parties have agreed that the arbitrator will [decide the issue of arbitrability] by providing (in all three of the arbitration clauses at issue) that 'arbitration shall be conducted in accordance with the Commercial Arbitration Rules then in force of the American Arbitration Association' (AAA). [The relevant AAA rule], in turn, provides that '[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.' ... By incorporating the AAA Rules ... into their agreement, the parties clearly and unmistakably agreed that the arbitrator should decide whether the arbitration clause is valid. See, e.g., Contec Corp. v. Remote Solution, Co., 398 F.3d 205, 208 (2d Cir. 2005) ('when ... parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator'); Apollo Computer, Inc. v. Berg, 886 F.2d 469, 473 (1st Cir. 1989) ('By contracting to have all disputes resolved according to the Rules of the ICC ..., Apollo agreed to be bound by Articles 8.3 and 8.4. These provisions clearly and unmistakably allow the arbitrator to determine her own jurisdiction when, as here, there exists a prima facie

11

agreement to arbitrate whose continued existence and validity is being questioned.')...."

"'We find the reasoning of the Eleventh Circuit and other Circuit Courts of Appeal that have addressed this issue persuasive and hold that an arbitration provision that incorporates rules that provide for the arbitrator to decide issues of arbitrability clearly and unmistakably evidences the parties' intent to arbitrate the scope of the arbitration provision.'

"973 So. 2d at 339-40 (footnotes omitted). This Court has since consistently reiterated the holding that questions of arbitrability must be decided by an arbitrator when the parties have executed a contract containing an arbitration provision incorporating the AAA commercial arbitration rules. See, e.g., Slamen v. Slamen, 254 So. 3d 188 (Ala. 2017); Locklear Auto. Grp., Inc. v. Hubbard, 252 So. 3d 67 (Ala. 2017); Managed Health Care Admin., Inc. v. Blue Cross & Blue Shield of Alabama, 249 So. 3d 486 (Ala. 2017); Bugs 'R' Us, LLC v. McCants, 223 So. 3d 913 (Ala. 2016);[4] Reedstrom; Anderton v. Practice-Monroeville, P.C., 164 So. 3d 1094, 1102 (Ala. 2014); and Auto Owners Ins., Inc. v. Blackmon Ins. Agency, Inc., 99 So. 3d 1193 (Ala. 2012)."

Eickhoff Corp. v. Warrior Met Coal, LLC, 265 So. 3d 216, 221-22 (Ala. 2018) (emphasis added).

---

[4]According to Terminix, the facts in McCants, in which the Court reversed an order refusing to compel arbitration, are "virtually identical" to those in the present case. Terminix's brief at p. 23. Cf. Ex parte Morris, 782 So. 2d 249 (Ala. 2000).

Unlike the language of the arbitration provisions at issue in the cases on which the Turners rely, the language of the arbitration provision in the baiting agreement is sufficiently broad to encompass, at least on its face, the Turners' claims against Terminix -- even to the extent that those claims allegedly relate to an earlier transaction. See <u>Orkin Exterminating Co. v. Larkin</u>, 857 So. 2d 97, 103 (Ala. 2003) ("[W]e have compelled the arbitration of disputes arising out of a previous transaction when it was clear that the parties in a subsequently executed arbitration agreement intended to arbitrate such disputes based upon the broad scope of the arbitration clause at issue."). Specifically, the baiting agreement renewed by the Turners indicates that the parties will arbitrate <u>any</u> "claim, dispute or controversy" relating to the "relationships" between the parties thereto. That language appears to amount to an agreement to arbitrate claims arising out of even prior acts occurring as part of the parties' relationships, including Terminix's preparation and provision of the report.[5] Regardless of whether the baiting agreement is, in fact, applicable to claims based on the report,

---

[5]The Turners' complaint specifically acknowledges that they "were the intended beneficiar[ies] of" the report.

13

that issue is to be determined by the arbitrator under the AAA rules, which the baiting agreement also incorporated. On that issue, too, our caselaw is well settled:

> "[O]nce it is established (1) that two parties to a dispute are bound by a valid contract containing an arbitration provision, (2) that that same contract contains a clear indication that the parties have agreed to arbitrate the issue of arbitrability, and (3) that the subject dispute is at least arguably within the scope of that contract, this Court will not entertain arguments that the dispute actually falls within the scope of some other contract binding the parties that does not contain an arbitration provision. Rather, those arguments should be directed to the arbitrator. See, e.g., [Auto Owners Ins., Inc. v.] Blackmon [Ins. Agency, Inc.], 99 So. 3d [1193] at 1198 [(Ala. 2012)] ('Because that is an arguable question, it is the arbitrator's task to decide whether the dispute in this case is, or is not, subject to mandatory arbitration under the … agreement.'). Numerous parties on appeal -- as well as even dissenting Justices on this Court -- have urged this Court to abandon this standard and, instead, to make the arbitrability determination in such cases itself; however, we have continually declined to do so."

Eickhoff Corp., 265 So. 3d at 224. Accordingly, based on the foregoing and the language of the arbitration provision in the baiting agreement, the scope and applicability of that provision are for the arbitrator to determine.

Finally, to the extent that, on appeal, the Turners appear to challenge the potential authenticity of Terminix's exhibits below, namely

the agreements containing the arbitration provisions, nothing in the record before us suggests that they challenged those documents on this basis before the trial court. Similarly, we also see nothing suggesting that the Turners disputed that the agreements at issue related to a transaction affecting interstate commerce. See Elizabeth Homes, supra.

Also, contrary to the Turners' representations on appeal, once Terminix made the required showing of an existing contract both ostensibly affecting interstate commerce and requiring arbitration by producing that contract to the trial court, the burden shifted to the Turners to present evidence demonstrating that the arbitration provision was invalid or inapplicable to their claims. See Elizabeth Homes, supra. See also Ex parte Greenstreet, Inc., 806 So. 2d 1203, 1209 (Ala. 2001) ("[O]nce a moving party has satisfied its burden of production by making a prima facie showing that an agreement to arbitrate exists in a contract relating to a transaction substantially affecting interstate commerce, the burden of persuasion shifts to the party opposing arbitration."). In any event, the Turners produced nothing either calling the authenticity of the baiting agreement into question or disputing their renewal of that agreement in 2024.

15

Conclusion

The Turners' claims against Terminix are at least arguably connected to the baiting agreement to the extent that it referenced the "relationships" created among all parties thereto and "any" contract affecting them. Because the parties to the baiting agreement also agreed that the arbitrator would decide questions regarding the applicability of the arbitration provision or the arbitrability of their dispute, the trial court erred when it denied Terminix's motion seeking to compel arbitration. Therefore, the trial court's order is hereby reversed and the cause is remanded for the trial court to enter an order granting Terminix's motion seeking to compel arbitration and staying proceedings in the trial court during the pendency of the arbitration proceedings.

REVERSED AND REMANDED.

Stewart, C.J., and Bryan, Mendheim, and McCool, JJ., concur.