BRYAN, Justice.
Eric Anderton and Jackson Key Practice Solutions, LLC (“Jackson Key”), appeal from the Monroe Circuit Court’s order denying their motion to compel arbitration. We reverse and remand.
The Practice-Monroeville, P.C. (“the Practice”), is a medical-practice group located in Monroeville. Allscripts Healthcare, LLC (“Allscripts”), sells health-care software to health-care providers. Alls-cripts is a North Carolina company and does not have an office in Alabama. Jackson Key is a certified “sales-and-service partner” of Allscripts, selling and servicing Allscripts software, and Anderton is an employee and partial owner of Jackson Key. In May 2011, the Practice and Alls-cripts entered into a written contract in which the Practice purchased health-care software called “MyWay” from Allscripts through Jackson Key (“the contract”). Although the contract was between the Practice and Allscripts, Jackson Key supported the transaction. The contract provides that “Allscripts may subcontract its obligations hereunder to a third party or affiliate.” An addendum to the contract further states that “Allscripts and [the Practice] agree that the Allscripts MyWay Software shall be hosted by Jackson Key[, and] that any backup, system performance, data recovery, [and] service levels will be the responsibility of [Jackson Key].”
The contract contains an arbitration provision, . which states, in pertinent part: “Any dispute or claim arising out of, or in connection with, this Agreement shall be finally settled by binding arbitration in Raleigh, NC, in accordance with the then-current rules and procedures of the American Arbitration Association.... ”
The Practice became dissatisfied with the performance of the MyWay software and unsuccessfully attempted to cancel its contract with Allscripts. On September 12, 2011, the Practice sued Jackson Key and Anderton, but not Allscripts, in the *1097 circuit court. The Practice alleged that Jackson Key, pursuant to the addendum to the contract, had undertaken sole responsibility for “system performance” of the MyWay software that it had implemented for the Practice. The complaint further alleged that Jackson Key and Anderton were negligent in establishing the system performance of that software. On October 21, 2011, Jackson Key and Anderton moved to compel arbitration based on the arbitration provision in the contract.
In November 2011, Jackson Key, acting pro se, sued the Practice in the Monroe District Court. In that action, Jackson Key alleged that the Practice owed it money for Microsoft Word software that Jackson Key had purchased for the Practice. Following a trial, the district court entered a judgment in favor of the Practice on March 28, 2012. Jackson Key subsequently appealed that judgment to the Monroe Circuit Court. Over Jackson Key and An-derton’s objection, the circuit court consolidated that appeal with the action initiated by the Practice regarding the contract.
The Practice opposed the motion to compel arbitration in the circuit court. 'The Practice argued that the circuit court — not the arbitrator — should decide the threshold issue of whether the dispute over the MyWay software is arbitrable. The Practice then argued that the circuit court should deny Jackson Key and Anderton’s motion to compel arbitration because, it said, the dispute was not within the scope of the arbitration provision. Additionally, the Practice argued that Jackson Key and Anderton had waived any right to arbitrate by substantially invoking the litiga-, tion process in the district court.[1] On July 31, 2013, the circuit court denied the motion to compel, without stating a reason. Jackson Key and Anderton appealed pursuant to Rule 4(d), Ala. R.App. P., which authorizes an appeal from an order either granting or denying a motion to compel arbitration.

Standard of Review

‘“This Court’s review of an order granting or denying a motion to compel arbitration is de novo.... ’
“United Wisconsin Life Ins. Co. v. Tankersley, 880 So.2d 385, 389 (Ala.2003). Furthermore:
“ ‘ “A motion to compel arbitration is analogous to a motion for sum- mary judgment. TranSouth Fin. Corp. v. Bell, 739 So.2d 1110, 1114 (Ala.1999). The party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and proving that that contract evidences a transaction affecting interstate commerce. Id. ‘After a motion to compel arbitration has been made and supported, the burden is on the non-movant to present evidence that the supposed arbitration agreement is not valid or does not apply to the dispute in question.’ ”
‘“Fleetwood Enters., Inc. v. Bruno, 784 So.2d 277, 280 (Ala.2000) (quoting Jim Burke Auto., Inc. v. Beavers, 674 So.2d 1260, 1265 n. 1 (Ala.1995) (emphasis omitted)).’
“Vann v. First Cmty. Credit Corp., 834 So.2d 751, 753 (Ala.2002).”
Cartwright v. Maitland, 30 So.3d 405, 408-09 (Ala.2009).

*1098
Discussion

There is no dispute that a contract calling for arbitration exists in this case and that that contract evidences a transaction affecting interstate commerce. In the circuit court, the parties disputed whether Jackson Key and Anderton had waived any right they may have had to arbitration and whether the Practice’s claim falls within the scope of the arbitration provision. The parties also disputed whether the circuit court or the arbitrator should decide the issue of arbitrability. The circuit court did not give a reason for denying Jackson Key and Anderton’s motion to compel arbitration. We will examine the disputed issues to determine whether the circuit court could have properly denied the motion to compel.

I. Issues Relating to Waiver

We first address whether Jackson Key and Anderton waived any right they may have to arbitration by substan-. tially invoking the litigation process in Jackson Key’s action in the district court. As a threshold matter, we address whether the waiver issue is one for the circuit court or the arbitrator to decide. This Court has stated that “the issue whether a party has waived the right to arbitration by its conduct during litigation is a question for the court and not the arbitrator.” Ocwen Loan Servicing, LLC v. Washington, 939 So.2d 6, 14 (Ala.2006).[2] However, the general rule that the court and not the arbitrator decides whether a party has waived the right to arbitration has an exception: issues typically decided'by the court will be decided by the arbitrator instead when there is “ ‘clear and unmistakable evidence’ ” of such an agreement in the arbitration provision. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995) (quoting AT & T Techs., Inc. v. Communications Workers of America, 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (alterations omitted)); see also Marie v. Allied Home Mortg. Corp., 402 F.3d 1, 14 (1st Cir.2005) (citing First Options). In this case, Jackson Key and Anderton argue in their reply brief that the arbitration provision, by incorporating the rules and procedures of the American Arbitration Association (“the AAA”), clearly and unmistakably indicates that the arbitrator, not the court, should decide the waiver issue. However, Jackson Key and Ander-ton first make that argument in their reply brief. “We do not permit new matters to be raised for the first time in a reply brief.” Birmingham Bd. of Educ. v. Boyd, 877 So.2d 592, 594 (Ala.2003).
Although Jackson Key and Ander-ton argue in their principal brief that the relevant incorporated AAA rule provides for the arbitrator rather than the court to decide whether the dispute falls within the scope of the arbitration provision, see Part II, infra, they did not make a similar argument about waiver until they filed their reply brief. Further, the record on appeal does not indicate that Jackson Key and Anderton made such an argument about waiver before the circuit court. Rather,[1] in a filing submitted below, they *1099 “agree[d] that the issue of waiver is for the Court to decide, but dispute[d] that there has been any waiver.” “This Court cannot consider arguments advanced for the purpose of reversing the judgment of a trial court when those arguments were never presented to the trial court for consider-ation_” State Farm Mut. Auto. Ins. Co. v. Motley, 909 So.2d 806, 821 (Ala.2005). For these reasons, we do not further discuss whether the AAA rule incorporated into the arbitration provision clearly and unmistakably indicates that the arbitrator instead of the court should decide the waiver issue.
We next discuss the merits of the waiver issue.
“It is well settled under Alabama law that a party may waive its right to arbitrate a dispute if it substantially invokes the litigation process and thereby substantially prejudices the party opposing arbitration. Whether a party’s participation in an action amounts to an enforceable waiver of its right to arbitrate depends on whether the participation bespeaks an intention to abandon the right in favor of the judicial process, and, if so, whether the opposing party would be prejudiced by a subsequent order requiring it to submit to arbitration. No rigid rule exists for determining what constitutes a waiver of the right to arbitrate; the determination as to whether there has been a waiver must, instead, be based on the particular facts of each case.”
Companion Life Ins. Co. v. Whitesell Mfg., Inc., 670 So.2d 897, 899 (Ala.1995).
“In order to demonstrate that the right to arbitrate a dispute has been waived, the party opposing arbitration must demonstrate both (1) that the party seeking arbitration substantially invoked the litigation process, and (2) that the party opposing arbitration would be substantially prejudiced by an order requiring it to submit to arbitration.”
SouthTrust Bank v. Bowen, 959 So.2d 624, 683 (Ala.2006) (some emphasis omitted). “Because there is a strong federal policy favoring arbitration, waiver of the right to compel arbitration is not lightly inferred, and the party seeking to prove waiver has a ‘heavy burden.’” Aurora Healthcare, Inc. v. Ramsey, 88 So.3d 495, 500 (Ala.2011) (quoting Paragon Ltd. v. Boles, 987 So.2d 561, 564 (Ala.2007)). “Additionally, as this Court has consistently noted: ‘[T]here is a presumption against a court’s finding that a party has waived the right to compel arbitration.’ ” Bowen, 959 So.2d at 633 (quoting Eastern Dredging & Constr., Inc. v. Parliament House, L.L.C., 698 So.2d 102,103 (Ala.1997)).
Before the circuit court, the Practice argued that Jackson Key and An-derton had waived any right to arbitration by litigating the district court action seeking reimbursement for the Practice’s purchase of Microsoft Word programs. As an initial matter, we note that Jackson Key was the only plaintiff in the district court action; Anderton was not a party in that action. Clearly, Anderton did not waive any right he may have to arbitrate. After being sued in the circuit court, Anderton’s first action was to file, with Jackson Key, a motion to compel arbitration. Merely filing a motion to compel arbitration does not substantially invoke the litigation process. See Ex parte Merrill Lynch, Pierce, Fenner & Smith, Inc., 494 So.2d 1, 3 (Ala.1986) (concluding that there was no waiver when the defendant merely filed a motion to compel arbitration); and First Family Fin. Servs. v. Jackson, 786 So.2d 1121, 1128 (Ala.2000) (same); see also Kennamer v. Ford Motor Credit Co., 153 So.3d 752 (Ala.2014) (concluding that there was no waiver of the right to arbitration when a *1100 car dealership merely filed an answer and a motion to compel arbitration).
We also conclude that Jackson Key did not waive any right it may have to arbitrate the MyWay dispute by litigating the district court action. In the district court, Jackson Key alleged that the Practice owed it money for Microsoft Word software Jackson Key had sold to the Practice. At trial in the district court, Albert Key, an employee of Jackson Key, testified that, while Jackson Key was providing training to the Practice’s personnel on the MyWay software, the Practice asked Jackson Key to purchase and install 10 copies of Microsoft Word. Key testified that Jackson Key purchased and installed the Microsoft software but that the Practice failed to reimburse Jackson Key for the software. Key further stated that the Microsoft Word transaction was separate from the contract in which the Practice purchased the MyWay software from Alls-cripts. The record does not contain an arbitration provision addressing the purchase of the Microsoft software.
The district court action presented a distinct issue from the Practice’s claim in the circuit court, i.e., that Jackson Key and Anderton were negligent in establishing the system performance of the MyWay software the Practice had purchased from Allscripts. “Only prior litigation of the same legal and factual issues as those the party now wants to arbitrate results in waiver of the right to arbitrate.” Larry E. Edmonson, Domke on Commercial Arbitration § 23:6 (3d ed.2014). See also Doctor’s Assocs., Inc. v. Distajo, 107 F.3d 126, 133 (2d Cir.1997) (stating that precedent in that circuit “support[s] the view that only prior litigation of the same legal and factual issues as those the party now wants to arbitrate results in waiver of the right to arbitrate” and that “[o]ther circuits seem to agree that waiver can only occur when a party has previously litigated the same claims it now seeks to arbitrate”); Gingiss Int’l, Inc. v. Bormet, 58 F.3d 328, 330-32 (7th Cir.1995) (stating that a franchisor who brought an unlawful-detainer action against its franchisee did not waive its right to arbitrate other claims brought by the franchisee because the two suits involved different issues); and Subway Equip. Leasing Corp. v. Forte, 169 F.3d 324, 328 (5th Cir.1999) (“[A] party only invokes the judicial process to the extent it litigates a specific claim it subsequently seeks to arbitrate.”). Compare Distajo, Gingiss, and Subway with Kennamer, supra (concluding that, in an appeal from a district court judgment to a circuit court, a credit company had waived its right to arbitrate an issue after litigating the same issue in the district court). Jackson Key’s conduct in pursuing its claim in the district court did not constitute a waiver of any right it may have to arbitrate a distinct claim brought against it in the circuit court. Jackson Key’s litigating its claim regarding Microsoft Word in the district court did not indicate an “intention to abandon,” Companion Life, 670 So.2d at 899, its alleged right to arbitrate the claim in the circuit court regarding the system performance of the MyWay software.
Because Jackson Key and Anderton did not substantially invoke the litigation process, we need not address the element of substantial prejudice. We conclude that the circuit court could not have properly denied the motion to compel arbitration on the ground that Jackson Key and Ander-ton had waived any right to arbitration they may have.

II. Issues Relating to the Scope of the Arbitration Provision

These issues concern whether Jackson Key and Anderton, nonsignatories to the contract containing the arbitration provision, can compel arbitration of the *1101 dispute over the MyWay software. “[Generally, a nonsignatory cannot compel arbitration.” Ex parte Stripling, 694 So.2d 1281, 1288-84 (Ala.1997). However, there are exceptions to this general rule. Jackson Key and Anderton argue that they satisfy one of those exceptions — the equitable-estoppel exception — which allows a nonsignatory to enforce an arbitration provision under certain circumstances. See Ex parte Stamey, 776 So.2d 85, 89 (Ala.2000) (allowing nonsignatories to enforce an arbitration provision if “(1) ... the scope of the arbitration agreement signed by the party resisting arbitration [is] broad enough to encompass those claims made by that party against nonsig-natories, or [if] those claims [are] ‘intimately founded in and intertwined with’ the claims made by the party resisting arbitration against an entity that is a party to the contract, and (2) ... the description of the parties subject to the arbitration agreement [is] not ... so restrictive as to preclude arbitration by the party seeking it” (emphasis omitted)).
As a threshold issue, Jackson Key and Anderton argue that the arbitrator — not the circuit court — should decide whether the arbitration provision may be used to compel arbitration of the dispute here. This Court has explained the threshold issue of “who decides” the issue of “arbitrability”:
“In ruling on a motion to stay judicial proceedings following a request for arbitration, the court is required to decide matters of ‘substantive arbitrability,’ that is, (1) whether a valid agreement to arbitrate exists and, if so, (2) whether the specific dispute falls within the scope of that agreement Dean Witter[ Reynolds, Inc. v. McDonald ], 758 So.2d [589,] 542 [ (Ala.1999) ]. ‘Procedural ar-bitrability,’ on the other hand, involves questions that grow out of the dispute and bear on its final disposition, e.g., defenses such as notice, laches, estoppel, and other similar compliance defenses; such questions are for an arbitrator to decide. See Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84,123 S.Ct. 588, 154 L.Ed.2d 491 (2002) (‘ “ ‘procedural’ questions which grow out of the dispute and bear on its final disposition are presumptively not for the judge, but for an arbitrator, to decide’”); John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964) (holding that an arbitrator should decide whether the steps of a grievance procedure were completed, where those steps were prerequisites to arbitration).”
Brasfield & Gorrie, L.L.C. v. Soho Partners, L.L.C., 35 So.3d 601, 604-05 (Ala.2009). To clarify, we note that the United States Supreme Court has referred to questions of “substantive arbitrability” as simply “questions of arbitrability” and questions of “procedural arbitrability” as “procedural questions.” Howsam, 537 U.S. at 83. A court decides issues of substantive arbitrability “[u]nless the parties clearly and unmistakably provide otherwise.” AT & T, 475 U.S. at 649.
The question whether an arbitration provision may be used to compel arbitration of a dispute between a nonsig-natory and a signatory is a question of substantive arbitrability (or, under the Supreme Court’s terminology, simply “ar-bitrability”). In First Options, 514 U.S. at 943-46, the Supreme Court analyzed the question whether an arbitration agreement binds a nonsignatory as a question of arbitrability. See also How-sam, 537 U.S. at 84 (noting that in First Options the Supreme Court held that the question “whether the arbitration contract bound parties who did not sign the agreement” is a question of arbitrability *1102 for a court to decide). More recently, the United States Court of Appeals for the Eighth Circuit succinctly addressed the threshold issue before us. In Eckert/Wordell Architects, Inc. v. FJM Properties of Willmar, LLC, 756 F.Bd 1098 (8th Cir.2014), a nonsignatory sought to compel arbitration of a dispute with a signatory, as in this case. The court stated:
“Whether a particular arbitration provision may be used to compel arbitration between a signatory and a nonsignatory is a threshold question of arbitrability. See Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84-85, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002) (delineating potentially dispositive threshold issues between ‘questions of arbitrability’ and ‘procedural questions’). We presume threshold questions of arbitrability are for a court to decide, unless there is clear and unmistakable evidence the parties intended to commit questions of arbitrability to an arbitrator. Id. at 83, 123 S.Ct. 588; Express Scripts, Inc. v. Aegon Direct Mktg. Servs., Inc., 516 F.3d 695, 701 (8th Cir.2008). We have previously held the incorporation of the AAA Rules into a contract requiring arbitration to be a clear and unmistakable indication the parties intended for the arbitrator to decide threshold questions of arbitrability.... Eckert Wordell’s drafting of the architectural services contract here to incorporate the AAA Rules requires the same result.”
756 F.3d at 1100. See also Knowles v. Community Loans of America, Inc. (No. 12-0464-WS-B, Nov. 20, 2012) (S.D.Ala.2012) (not reported in F.Supp.2d) (“A question as to “whether the arbitration contract bound parties who did not sign the agreement’ is one that ‘raises a “question of arbitrability” for a court to decide.’ ” (quoting Howsam, 537 U.S. at 84)).
Like the Eighth Circuit, we have held “that an arbitration provision that incorporates rules that provide for the arbitrator to decide issues of arbitrability clearly and unmistakably evidences the parties’ intent to arbitrate the scope of the arbitration provision.” CitiFinancial Corp. v. Peoples, 973 So.2d 332, 340 (Ala.2007). See also Joe Hudson Collision Ctr. v. Dymond, 40 So.3d 704, 710 (Ala.2009) (concluding that an arbitrator decides issues of substantive arbitrability when the arbitration provision incorporated the same AAA rule as in the .present case); and Wells Fargo Bank, N.A. v. Chapman, 90 So.3d 774, 783 (Ala.Civ.App.2012) (same). The relevant AAA rule incorporated by the arbitration provision provides: “The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.” Thus, although the question whether an .arbitration provision may be used to compel arbitration between a signatory and a nonsignatory is a threshold question of arbitrability usually decided by the court, here that question has been delegated to the arbitrator. The arbitrator, not the court, must decide that threshold issue.

Conclusion

Jackson Key and Anderton did not waive any right to arbitration they may have. The question whether Jackson Key and Anderton, as nonsignatories to the contract containing the arbitration provision, can compel arbitration of the dispute over the MyWay software is a question for the arbitrator, not the court, pursuant to the arbitration provision in the contract. The circuit court erred in denying Jackson Key and Anderton’s motion to compel arbitration. We therefore reverse the order *1103 and remand the case for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
STUART, BOLIN, MAIN, and WISE, JJ., concur.
SHAW, J., concurs in part and concurs in the result.
MOORE, C.J., and PARKER and MURDOCK, JJ., dissent.

. Although most of the Practice's argument below regarding the waiver issue was in reference to Jackson Key, at times the Practice referred to the actions in the district court by the circuit court "defendants,” i.e., both Jackson Key and Anderton. Thus, it appears that the Practice argued that both Jackson Key and Anderton waived their alleged right to arbitrate through their conduct in the district court.

. In Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84-85, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002), the United States Supreme Court stated that "the presumption is that the arbitrator should decide 'al!egation[s] of waiver, delay, or a like defense to arbitrability.’ ” (Quoting Moses H. Cone Mem’l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).) However, this Court and some other courts have concluded that Howsam did not intend to disturb the traditional rule that the issue whether a party has waived the right to arbitration by its conduct, during litigation is a question for the court and not the arbitrator. See Ocwen, 939 So.2d at 12-14 (thoroughly discussing the matter).