Rel: November 15, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2024-2025

_____

### SC-2024-0009

_____

## D.R. Horton, Inc.-Birmingham

## v.

## Richard Carlton and Kimberly Carlton

## Appeal from Baldwin Circuit Court
## (CV-23-900320)

STEWART, Justice.

D.R. Horton, Inc.-Birmingham, appeals from an order of the Baldwin Circuit Court denying its motion to stay the proceedings in the trial court and to compel arbitration. We reverse and remand.

Facts and Procedural History

In February 2017, Richard Carlton and Kimberly Carlton entered into an agreement with D.R. Horton to purchase a newly constructed house in Spanish Fort. The Carltons financed the purchase with a Federal Housing Administration ("the FHA") insured loan. The parties' written purchase agreement ("the purchase agreement") contained an arbitration provision, which provided:

> "15. Mandatory Binding Arbitration. Purchaser and Seller shall submit to binding arbitration any and all disputes which may arise between them regarding this agreement and/or the property, including but not limited to any disputes regarding: (A) Seller's construction and delivery of the home; (B) Seller's performance under any punch list or inspection agreement; and (C) The limited warranty pursuant to section 14 above. The arbitration shall take place in the county in which the property is located. The proceedings shall be conducted pursuant to the rules of the American Arbitration Association, and to the extent possible, under rules which provide for an expedited hearing. The filing fee for the arbitration shall be paid by the party filing the arbitration demand, but the arbitrator shall have the right to assess or allocate the filing fees and any other cost of arbitration as a part of the arbitrator's final order. The arbitration shall be binding and final, and either party shall have the right to seek judicial enforcement of the arbitration award.

Notwithstanding any other provision herein, any disputes arising under the limited warranty shall be mediated, arbitrated and/or judicially resolved pursuant to the terms, conditions, procedures, and rules of that warranty program. Notwithstanding the foregoing, Seller shall have the right to interplead all or any part of the earnest money into of a court of competent jurisdiction as provided for in section 4 herein."

Section 14 of the purchase agreement provided that D.R. Horton would provide the Carltons with a 10-year limited warranty ("the limited warranty"), and, except for the 1-year "Warranty of Completion of Construction" required by the United States Department of Housing and Urban Development ("HUD"), D.R. Horton disclaimed all other warranties. The limited warranty was to be administered by Residential Warranty Company, LLC. Under the terms of the limited warranty, D.R. Horton was to be the "warrantor" in years 1 and 2 of the limited warranty, and an "insurer" was to be the warrantor for years 3 through 10 of the limited warranty. Further, the terms of the limited warranty explained the process the Carltons were to follow to initiate a warranty claim. The limited warranty also contained provisions relating to the resolution of disputes arising from any claims made under the limited warranty. Although the limited warranty provided for binding arbitration, that provision was modified by a "HUD Addendum"

applicable to homeowners who were recipients of loans insured by the FHA or the United States Department of Veterans Affairs ("the VA"). The HUD Addendum provided that "[t]he judicial resolution of disputes is not precluded by this warranty and may be pursued by the homeowner at any time during the dispute resolution process." Finally, the limited warranty also provided:

> "This limited warranty is separate and apart from your contract and/or other sales agreement with your Builder. It cannot be affected, altered or amended in any way by any other agreement which you may have."

At the closing, the Carltons also signed a one-page acknowledgement indicating that they had received and understood the limited warranty. That acknowledgement included a statement that, "[e]xcept for purchasers of FHA or VA financed homes, Purchaser acknowledges and understands that the [limited warranty] includes a provision requiring all disputes that arise under the warranty to be submitted to binding arbitration."

Finally, because the Carltons financed the purchase of the home through an FHA loan, D.R. Horton was required to provide the Carltons with the separate, HUD one-year completion-of-construction warranty. That warranty provided:

4

"The Dwelling located on the property identified in the caption hereof is constructed in substantial conformity with the plans and specification (including any amendments thereof, or changes and variations therein) which have been approved in writing by the Federal Housing Commissioner or the Secretary of Veterans Affairs on which the Federal Housing Commissioner or Secretary of Veterans Affairs based the valuation of the dwelling: Provided, however, that this warranty shall apply only to such instances of substantial nonconformity as to which the Purchaser(s)/Owners(s) or his/her (their) successors or transferees shall have given written notice to the Warrantor at any time or times within one year from the date of original conveyance of title to such Purchaser(s)/Owner(s) or the date of initial occupancy, whichever first occurs

"….

"The undersigned Warrantor further warrants to the Purchaser(s)/Owner(s) or his/her (their) successors or transferees, the property against defects, in equipment, material, or workmanship and materials supplies or performed by the Warrantor or any subcontractor or supplier at any tier resulting in noncompliance with the standards of quality as measured by acceptable trade practices. This warranty shall continue for a period of one year from the date of original conveyance of title to such Purchaser(s) or from the date of full completion of each of any items completed after conveyance of title.

The completion-of-construction warranty provided that it was "in addition to, and not in derogation of, all other rights and privileges which the [Carltons] may have under any other law or instrument."

In March 2017, the Carltons closed on the purchase of the house. In the fall of 2022, the Carltons discovered a large structural crack in the foundation of the house. The Carltons did not seek to initiate a warranty claim under the limited warranty. Rather, in March 2023, the Carltons filed a complaint against D.R. Horton, alleging negligence, wantonness, breach of contract, and misrepresentation/suppression. Specifically, the Carltons alleged that D.R. Horton had breached the purchase agreement by failing to construct the house in accordance with "applicable building codes, the Warranty of Completion of Construction, HUD and VA minimum standards, plans, specifications, industry standards and in a workmanlike manner." They also asserted that D.R. Horton had negligently or wantonly constructed the house, and that it had misrepresented to the Carltons that the "home met certain minimum property standards." D.R. Horton filed a motion to stay the action and to compel arbitration, citing the purchase agreement's mandatory arbitration provision. The Carltons filed an opposition to the motion to stay and to compel arbitration, asserting that, because they had been FHA loan recipients, they were exempt from the mandatory arbitration provisions of the purchase agreement. In November 2023, the trial court

6

entered an order denying D.R. Horton's motion to stay and to compel arbitration. D.R. Horton timely filed a notice of appeal in accordance with Rule 4(d), Ala. R. App. P.

## Standard of Review

This Court's standard of review of an order denying a motion to compel arbitration is well settled:

> " ' "This Court reviews de novo the denial of a motion to compel arbitration. Parkway Dodge, Inc. v. Yarbrough, 779 So.2d 1205 (Ala.2000). A motion to compel arbitration is analogous to a motion for a summary judgment. TranSouth Fin. Corp. v. Bell, 739 So.2d 1110, 1114 (Ala.1999). The party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and proving that the contract evidences a transaction affecting interstate commerce. Id. '[A]fter a motion to compel arbitration has been made and supported, the burden is on the non-movant to present evidence that the supposed arbitration agreement is not valid or does not apply to the dispute in question.' Jim Burke Automotive, Inc. v. Beavers, 674 So.2d 1260, 1265 n. 1 (Ala.1995) (opinion on application for rehearing)." ' "

Hoover Gen. Contractors-Homewood, Inc. v. Key, 201 So. 3d 550, 552 (Ala. 2016) (quoting Elizabeth Homes, L.L.C. v. Gantt, 882 So. 2d 313, 315 (Ala.2003), in turn quoting Fleetwood Enters., Inc. v. Bruno, 784 So. 2d 277, 280 (Ala. 2000)).

## Discussion

7

D.R. Horton contends that the trial court erred in denying its motion to stay and to compel arbitration. It argues that the arbitration provision contained in the purchase agreement requires that the Carltons' claims against it be decided through the arbitration process. Further, D.R. Horton argues that the question whether the Carltons' claims are covered under the mandatory arbitration provision contained in the purchase agreement or whether, as the Carltons argue, their claims are exempt pursuant to the HUD Addendum to the limited warranty and the one-page warranty acknowledgment they signed at closing, is a question of arbitrability that, under the parties' agreement, is to be decided by the arbitrator. [1]

---

[1]D.R. Horton contends that the HUD Addendum does not apply because, it says, that addendum pertains to only the arbitration agreement contained in the separate limited warranty. D.R. Horton posits that, by its terms, the limited warranty is an independent agreement that does not affect the purchase agreement under which the Carltons' claims arise. D.R. Horton further notes that it was no longer the warrantor under the limited warranty and that, regardless, no claim was ever made by the Carltons under the limited warranty. Accordingly, it contends that the arbitration provision contained within the purchase agreement is controlling.

Given the parties' dispute as to the scope of the arbitration provision, we must first address the "gateway" issue of who decides the question of arbitrability -- the trial court or the arbitrator.

> "'In ruling on a motion to stay judicial proceedings following a request for arbitration, the court is required to decide matters of "substantive arbitrability," that is, (1) whether a valid agreement to arbitrate exists and, if so, (2) whether the specific dispute falls within the scope of that agreement. Dean Witter [Reynolds, Inc. v. McDonald], 758 So. 2d [539,] 542 [(Ala. 1999)]. "Procedural arbitrability," on the other hand, involves questions that grow out of the dispute and bear on its final disposition, e.g., defenses such as notice, laches, estoppel, and other similar compliance defenses; such questions are for an arbitrator to decide. See Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84, 123 S. Ct. 588, 154 L. Ed. 2d 491 (2002) ("'"procedural" questions which grow out of the dispute and bear on its final disposition are presumptively not for the judge, but for an arbitrator, to decide'"); John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 84 S. Ct. 909, 11 L. Ed. 2d 898 (1964) (holding that an arbitrator should decide whether the steps of a grievance procedure were completed, where those steps were prerequisites to arbitration).'
>
> "Brasfield & Gorrie, L.L.C. v. Soho Partners, L.L.C., 35 So. 3d 601, 604-05 (Ala. 2009). To clarify, we note that the United States Supreme Court has referred to questions of 'substantive arbitrability' as simply 'questions of arbitrability' and questions of 'procedural arbitrability' as 'procedural questions.' Howsam, 537 U.S. at 83."

Anderton v. Practice-Monroeville, P.C., 164 So. 3d 1094, 1101 (Ala. 2014).

We have explained, however, that there is an exception to the rule that issues of substantive arbitrability are to be decided by a court.

"Thus, disputes regarding the validity and scope of an arbitration provision (like the dispute here) are issues of substantive arbitrability, and generally such issues are decided by a court. However, there is an important exception to that general rule. Gateway questions of substantive arbitrability may be delegated to the arbitrator if the delegation is clear and unmistakable. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995) (citing AT & T Techs., Inc. v. Communications Workers of America, 475 U.S. 643, 649, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986)); see, e.g., Anderton[ v. Practice - Monroeville, P.C.], 164 So. 3d [1094,] 1100-02 [(Ala. 2014)] (applying such a delegation provision); and Federal Ins. Co. v. Reedstrom, 197 So. 3d 971, 972 (Ala. 2015) (same). The United States Supreme Court has long recognized that parties may agree to such a delegation provision, which is severable from the underlying agreement to arbitrate. Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 68-69, 78-79, 130 S. Ct. 2772, 177 L. Ed. 2d 403 (2010). '[P]arties can agree to arbitrate "gateway" questions of "arbitrability," such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy.' Rent-A-Center, 561 U.S. at 68-69. Succinctly stated, questions of substantive arbitrability are decided by a court unless the parties clearly and unmistakably provide otherwise.

"If the parties have clearly and unmistakably delegated questions of substantive arbitrability to the arbitrator, the court's role is narrow. If a party challenges the validity of the delegation provision itself, the court 'must consider the challenge before ordering compliance with' the delegation provision. Rent-A-Center, 561 U.S. at 71. However, 'unless

10

[a party] challenged the delegation provision specifically, [the court] must treat it as valid … and must enforce it … leaving any challenge to the validity of the [arbitration] [a]greement as a whole for the arbitrator.' 561 U.S. at 72. Because a delegation provision is severable from the other contract provisions, it will be enforced unless it is specifically challenged. 561 U.S. at 71-72 (enforcing a delegation provision when there was no specific challenge to that provision but a challenge to the entire arbitration provision on the ground of unconscionability)."

Regions Bank v. Rice, 209 So. 3d 1108, 1110-11 (Ala. 2016).

In this case, the arbitration provision at issue does not expressly delegate to an arbitrator decision-making authority regarding questions of arbitrability. However, the arbitration provision provides that "[t]he proceedings shall be conducted pursuant to the rules of the American Arbitration Association." The rules of the American Arbitration Association ("the AAA") provide that the arbitrator shall have the power to determine the scope or validity of the arbitration agreement. This Court, therefore, has on several occasions held that the incorporation of the rules of the AAA within an arbitration provision constitutes "clear and unmistakable" intent to submit issues of arbitrability to the arbitrator. For instance, in Bugs "R" Us, LLC v. McCants, 223 So. 3d 913 (Ala. 2016), this Court explained:

11

"In Anderton[ v. Practice-Monroeville, P.C., 164 So. 3d 1094 (Ala. 2014)], this Court determined that the incorporation into an arbitration provision of the commercial arbitration rules of [the AAA] constituted clear and unmistakable evidence of the parties' intent to submit issues of arbitrability to the arbitrator. See 164 So. 3d at 1101-02. This Court reiterated this conclusion in Federal Insurance Co. v. Reedstrom, 197 So. 3d 971, 976 (Ala. 2015):

> "'Like the arbitration agreement in Anderton[ v. Practice-Monroeville, P.C., 164 So. 3d 1094 (Ala. 2014)], the arbitration provisions in this case provides that any arbitration proceeding will be conducted "pursuant to the then-prevailing commercial arbitration rules of the American Arbitration Association." The relevant commercial arbitration rule, Rule 7(a), expressly provides, in its current form, that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." See Chris Myers Pontiac-GMC, Inc. v. Perot, 991 So. 2d 1281, 1284 (Ala. 2008) (noting that we may take judicial notice of the commercial arbitration rules of the American Arbitration Association even when they do not appear in the record). Thus, pursuant to Rule 7(a), … the question of whether [the defendant] has waived its right to enforce the arbitration provision … ha[s] been delegated to the arbitrators, and the arbitrators, not the trial court, must decide [this] threshold issue[].'

"The arbitration provision in this case provides, in pertinent part: '[A]ny claim … shall be resolved by neutral binding arbitration by the American Arbitration Association, under the rules of the AAA in effect at the time the claim is

12

filed ….'  Rule 7(a) of the AAA Commercial Rules provides:
'The arbitrator shall have the power to rule on his or her own
jurisdiction, including any objections with respect to the
existence, scope, or validity of the arbitration agreement or
the arbitrability of any claim or counterclaim.'  Rule 7(b)
provides, in pertinent part:  'The arbitrator shall have the
power to determine the existence or validity of a contract of
which an arbitration clause forms a part.'  Therefore, the
arbitration provision in this case shows an intent by the
parties to submit issues of arbitrability to the arbitrator."

223 So. 3d at 919 (footnotes omitted; emphasis added); see also Wiggins
v. Warren Averett, LLC, 307 So. 3d 519, 523 (Ala. 2020), and Managed
Health Care Admin., Inc. v. Blue Cross & Blue Shield of Alabama, 249
So. 3d 486, 491-92 (Ala. 2017).  Furthermore, we note that the Carltons
did not specifically challenge the delegation provision in the trial court.
See Rice, 209 So. 3d at 1111 ("'[U]nless [a party] challenged the
delegation provision specifically, [the court] must treat it as valid … and
must enforce it.'") (citations omitted).

In this case, the parties dispute the scope of the relevant arbitration
provision.  That arbitration provision states that the "proceedings shall
be conducted pursuant to the rules of the American Arbitration
Association."  Those AAA rules clearly and unmistakably delegate
questions of arbitrability to the arbitrator.  Accordingly, the
determination of the scope of the arbitration provision is a question for

the arbitrator, and the trial court, therefore, erred in denying the motion to stay and to compel arbitration.

Conclusion

The trial court's order is reversed, and the cause is remanded for the trial court to enter an order granting D.R. Horton's motion to compel arbitration and to stay the proceedings pending the outcome of that arbitration.

REVERSED AND REMANDED.

Wise, Sellers, and Cook, JJ., concur.

Parker, C.J., concurs in the result.