Rel: March 6, 2026

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2025-2026

_____

## SC-2025-0231

_____

## Ex parte Brian Smith

## PETITION FOR WRIT OF MANDAMUS

**(In re: ARC Realty, LLC; Joy Dill; Stacey McKinley; Eric McKinley; The Closing Agency, LLC, d/b/a Lake Martin Closing; Martha Louise McKee-Blackham; and Big Fish Real Estate Group at Lake Martin, LLC**

**v.**

**Brian Smith; Baltic Holdings, LLC; Arrowhead LM, LLC; Bay Pine LMP, LLC; and Kowaliga Investment Zero, LLC)**

**(Tallapoosa Circuit Court: CV-25-900027)**

---

**SC-2025-0242**

---

**Brian Smith; Baltic Holdings, LLC; Arrowhead LM, LLC; Bay Pine LMP, LLC; and Kowaliga Investment Zero, LLC**

**v.**

**ARC Realty, LLC; Joy Dill; Stacey McKinley; Eric McKinley; The Closing Agency, LLC, d/b/a Lake Martin Closing; Martha Louise McKee-Blackham; and Big Fish Real Estate Group at Lake Martin, LLC**

**Appeal from Tallapoosa Circuit Court**
**(CV-25-900027)**

BRYAN, Justice.

Brian Smith formed Baltic Holdings, LLC, Arrowhead LM, LLC ("Arrowhead"), Bay Pine LMP, LLC ("Bay Pine"), and Kowaliga Investment Zero, LLC; those companies purchase and develop property around Lake Martin. In March 2025, Smith and those four companies filed claims with the American Arbitration Association ("the AAA") against individuals and entities involved with the purchase of certain land along Lake Martin; those claims alleged fraud, breach of contract, and conspiracy, among other things. Later that month, several of the

2

individuals and entities named as respondents in the arbitration proceedings -- ARC Realty, LLC ("Arc Realty"); Joy Dill; Stacey McKinley; Eric McKinley; The Closing Agency, LLC, d/b/a Lake Martin Closing ("the Closing Agency"); Martha Louise McKee-Blackham; and Big Fish Real Estate Group at Lake Martin, LLC ("Big Fish") ("the plaintiffs") -- commenced a declaratory-judgment action against Smith and his four companies ("the defendants") in the Tallapoosa Circuit Court.[1] The plaintiffs sought a judgment declaring that they did not enter into a valid and enforceable agreement that requires them to arbitrate disputes with the defendants. The plaintiffs also sought an order staying the arbitration proceedings initiated by the defendants with the AAA.

---

[1]It appears that the plaintiffs were involved with the land transactions as follows: Arc Realty is a real-estate company that worked with the defendants in acquiring the properties; Dill, a real-estate agent with Arc Realty, worked with the defendants in acquiring the properties; Big Fish is a real-estate company that worked with the seller of the properties; Stacey McKinley is a real-estate agent with Big Fish; the Closing Agency is a company that assisted in the closing of the transactions; Eric McKinley is a member of the company that sold the properties and also a member of the Closing Agency; and McKee-Blackham was a consultant to the defendants regarding the transactions.

3

The defendants filed a motion asking the circuit court to compel arbitration. In seeking to compel arbitration, the defendants relied on arbitration provisions contained in two contracts for the sale of property around Lake Martin. Each land-sale contract contains one arbitration provision, and the two arbitration provisions are identical. In one contract, defendant Arrowhead purchased property from SAAB Triple T Investments, LLC; in the other contract, defendant Bay Pine purchased property from the same seller. None of the plaintiffs signed the land-sale contracts containing the arbitration provisions. However, the defendants argued that the plaintiffs were subject to arbitration based on the theory of equitable estoppel and because, the defendants said, the plaintiffs are third-party beneficiaries of the contracts. More importantly for purposes of our review, the defendants argued that the issue whether their dispute with the plaintiffs is subject to arbitration is an issue of arbitrability that must be determined by an arbitrator in the first place. As we will discuss below, the defendants argued that certain clauses in the arbitration provisions provide that arbitrability issues must be decided by an arbitrator.

4

In response to the motion to compel arbitration, the plaintiffs filed a motion in the circuit court to stay the arbitration proceedings before the AAA. The plaintiffs asserted that they had never entered into a contract with the defendants requiring them to arbitrate any dispute with the defendants. The plaintiffs argued that the circuit court, not an arbitrator, should make a threshold determination regarding "the existence of a valid agreement requiring arbitration" among the parties in this action. The circuit court agreed with the plaintiffs and entered an order staying the arbitration proceedings before the AAA. The order stayed the arbitration proceedings "in order for [the circuit court] to first determine whether the parties have entered into a valid and enforceable arbitration agreement." The defendants filed a notice of appeal, and Smith filed a petition for a writ of mandamus challenging the circuit court's order. This Court consolidated the appeal and the petition for a writ of mandamus.

We first address whether the order staying the arbitration proceedings is appealable. Rule 4(d), Ala. R. App. P., provides that "[a]n order granting or denying a motion to compel arbitration is appealable as a matter of right." Although the circuit court's order did not explicitly

5

deny the defendants' motion to compel arbitration, we conclude that the order did in fact deny that motion and, thus, that the order is appealable. As noted, the plaintiffs are nonsignatories to the land-sale contracts containing the arbitration provisions on which the defendants rely. This case concerns whether the defendants' claims against the plaintiffs, as nonsignatories, are subject to the arbitration provisions. In their motion to compel arbitration, the defendants argued that the issue whether their disputes with the plaintiffs are arbitrable is an issue of arbitrability that must be decided by an arbitrator. In its order, the circuit court framed the threshold issue differently, stating that the issue here is "whether the parties have entered into a valid and enforceable arbitration agreement"; that order stayed the arbitration proceedings "pending [the circuit court's] determination of whether an arbitration agreement exists between the Plaintiffs and the Defendants." However it is framed, the threshold issue is essentially this: Who decides -- the circuit court or an arbitrator -- whether the claims against the plaintiffs must be arbitrated? The defendants argued that an arbitrator, not a court, should decide that issue; however, the circuit court concluded that it, not an arbitrator, would determine that issue. Thus, the circuit court effectively denied

6

the defendants' motion to compel arbitration. Further, as explained below, this Court has consistently viewed this threshold issue as the defendants have framed it, and we have consistently said that an arbitrator must make the threshold determination in similar cases; we view the circuit court's refusal to allow the arbitrator to make this threshold determination as a denial of the motion to compel. As noted, the denial of a motion to compel arbitration is appealable under Rule 4(d). Accordingly, we conclude that the defendants' appeal is the proper vehicle to challenge the circuit court's order. Thus, we will decide the defendants' appeal, and we dismiss Smith's petition for a writ of mandamus, which he filed out of an abundance of caution based on the possibility that this Court might conclude that the order is not appealable.

> " 'This Court's review of an order granting or denying a motion to compel arbitration is de novo.
> ...'

"United Wisconsin Life Ins. Co. v. Tankersley, 880 So. 2d 385, 389 (Ala. 2003). Furthermore:

> " ' "A motion to compel arbitration is analogous to a motion for summary judgment. TranSouth Fin. Corp. v. Bell, 739 So. 2d 1110, 1114 (Ala. 1999). The party seeking to compel

>arbitration has the burden of proving the existence of a contract calling for arbitration and proving that that contract evidences a transaction affecting interstate commerce. Id. 'After a motion to compel arbitration has been made and supported, the burden is on the non-movant to present evidence that the supposed arbitration agreement is not valid or does not apply to the dispute in question.'"
>
>"'Fleetwood Enters., Inc. v. Bruno, 784 So. 2d 277, 280 (Ala. 2000) (quoting Jim Burke Auto., Inc. v. Beavers, 674 So. 2d 1260, 1265 n.1 (Ala. 1995) (emphasis omitted)).'
>
>"Vann v. First Cmty. Credit Corp., 834 So. 2d 751, 753 (Ala. 2002)."

Cartwright v. Maitland, 30 So. 3d 405, 408-09 (Ala. 2009).

The defendants argue that the circuit court erred by staying the arbitration proceedings and by failing to grant their motion to compel arbitration. In seeking to compel arbitration, the defendants relied on the arbitration provisions contained in the land-sale contracts. The arbitration provisions provide, in pertinent part:

>"All claims, disputes or other matters in question arising out of or relating in any way to this Contract or the breach thereof, including claims against any broker or sales associate, or relating to the relationship involved with, created by or concerning this Contract, including the involvement of any broker or sales associate ('Claim'), shall be submitted to

8

mediation with a mutually agreed upon mediator within forty-five (45) days of notice of the Claim. In the event no mediated resolution is reached within sixty (60) days of the party's notice of the Claim, all Claims shall be resolved by binding arbitration by a single arbitrator in Birmingham, Alabama in accordance with the Commercial Arbitration Rules of the [AAA] then in effect. ... All disputes concerning the arbitrability of any Claim or the enforceability or scope of this provision shall be subject to the same binding arbitration."

The dispute in this case stems from the fact that the plaintiffs are nonsignatories to the land-sale contracts. The defendants filed claims against the plaintiffs with the AAA, arguing that the arbitration provisions in the land-sale contracts are broad enough to encompass those claims. The plaintiffs responded by seeking a judgment in the circuit court declaring that the plaintiffs are not required to arbitrate the claims before the AAA because they are nonsignatories to the contracts containing the arbitration provisions. In response, the defendants argued, as they now argue to us, that an arbitrator must decide the threshold issue whether their claims against the plaintiffs in the AAA proceedings are arbitrable. In making that argument, the defendants rely on two clauses in the arbitration provisions: the delegation clause stating that "[a]ll disputes concerning the arbitrability of any Claim or the enforceability or scope of this provision shall be subject to ... binding

9

arbitration" and the incorporation clause stating that "all Claims shall be resolved ... in accordance with the Commercial Arbitration Rules of the [AAA]." The defendants observe that, under Rule 7(a) of the Commercial Arbitration Rules of the AAA, "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." Thus, the defendants argue that the arbitration provisions delegate questions regarding the arbitrability of claims -- including claims involving nonsignatories -- to an arbitrator both by expressly saying so in the delegation clause and by incorporating the AAA's Commercial Arbitration Rules in the incorporation clause. The defendants argue that either the delegation clause or the incorporation clause is sufficient to compel arbitration.

Thus, the question before us may be stated this way: When a contract contains an arbitration provision delegating threshold questions of arbitrability to an arbitrator (either expressly in the contract or by incorporating arbitration rules) who decides the arbitrability of claims involving nonsignatories to the contract -- a court or an arbitrator? As

10

the defendants argue, this Court has repeatedly concluded that an arbitrator makes that decision.

In <u>Wiggins v. Warren Averett, LLC</u>, 307 So. 3d 519 (Ala. 2020), this Court discussed the principles that are controlling here. In <u>Wiggins</u>, a signatory to a contract containing an arbitration provision sought to compel arbitration against a nonsignatory. Similar to this case, the signatory asserted that the nonsignatory was a third-party beneficiary of the contract. The Court in <u>Wiggins</u> discussed whether a court or an arbitrator must decide whether the claims involving the nonsignatory were arbitrable:

> "Wiggins's argument involves an issue of 'substantive arbitrability.' Substantive arbitrability, or simply 'arbitrability,' includes issues regarding the 'scope' of an arbitration provision.[2] <u>Regions Bank v. Rice</u>, 209 So. 3d 1108, 1110 (Ala. 2016) ('[D]isputes regarding the ... scope of an arbitration provision ... are issues of substantive arbitrability ....'). The 'scope' of an arbitration provision includes whether a particular claim or dispute falls within the language of what the provision requires to be arbitrated. See, e.g., <u>Eickhoff Corp. v. Warrior Met Coal, LLC</u>, 265 So. 3d 216, 225 (Ala. 2018) (holding that the issue whether a dispute over defective mining equipment was included under the terms of an arbitration provision was an issue of arbitrability), and

---

[2]This Court has sometimes used the term "substantive arbitrability" to refer to what the United States Supreme Court has referred to as "arbitrability." <u>See</u> <u>Anderton v. The Practice-Monroeville, P.C.</u>, 164 So. 3d 1094, 1101 (Ala. 2014).

11

Regions Bank, 209 So. 3d at 1109 (holding that whether the plaintiff's slip-and-fall claim was within the scope of an arbitration provision was a question of arbitrability). Additionally, our caselaw holds that whether the scope of an arbitration provision applies to nonparties or nonsignatories to an arbitration provision is also a question of arbitrability. See, e.g., Anderton v. The Practice-Monroeville, P.C., 164 So. 3d 1094, 1101 (Ala. 2014) ('The question whether an arbitration provision may be used to compel arbitration of a dispute between a nonsignatory and a signatory is a question of substantive arbitrability ....'), and MTA, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 114 So. 3d 27, 32 (Ala. 2012) (describing whether the language of an arbitration provision was limited to signatories as an issue of the 'scope' of the provision). Thus, we have held, 'substantive arbitrability addresses both whether the nonsignatories ... can enforce the agreement to arbitrate and whether the claims at issue are encompassed by the arbitration provision.' Carroll v. Castellanos, 281 So. 3d 365, 370 (Ala. 2019).

"A court generally makes the 'threshold' or 'gateway' determination of arbitrability; however, there is an exception when the arbitration provision itself requires that the arbitrator make the decision:

"'[D]isputes regarding the validity and scope of an arbitration provision ... are issues of substantive arbitrability, and generally such issues are decided by a court. However, there is an important exception to that general rule. Gateway questions of substantive arbitrability may be delegated to the arbitrator if the delegation is clear and unmistakable.'

"Regions Bank, 209 So. 3d at 1110. Who decides issues of substantive arbitrability -- the court or the arbitrator -- must necessarily be decided before the actual issue of arbitrability,

12

such as a challenge to the scope of the arbitration provision, is determined.

"When an arbitration provision indicates that the AAA rules will apply to the arbitration proceedings, we have held that it is 'clear and unmistakable' that substantive-arbitrability decisions are to be made by the arbitrator; this includes the decision whether the arbitration provision may be enforced against a nonsignatory to the contract:

"'[T]he arbitration provision in this case provides that any arbitration proceedings will be conducted "pursuant to the then-prevailing commercial arbitration rules of the American Arbitration Association." The relevant commercial arbitration rule, Rule 7(a), expressly provides, in its current form, that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." See Chris Myers Pontiac-GMC, Inc. v. Perot, 991 So. 2d 1281, 1284 (Ala. 2008) (noting that we may take judicial notice of the commercial arbitration rules of the American Arbitration Association even when they do not appear in the record). Thus, pursuant to Rule 7(a), ... the question of whether the arbitration provision may be enforced against a nonsignatory ... ha[s] been delegated to the arbitrators, and the arbitrators, not the trial court, must decide those threshold issues.'

"Federal Ins. Co. v. Reedstrom, 197 So. 3d 971, 976 (Ala. 2015). See also Eickhoff, 265 So. 3d at 222; Managed Health Care Admin., Inc. v. Blue Cross & Blue Shield of Alabama, 249 So. 3d 486, 493 (Ala. 2017); Bugs 'R' Us, LLC v. McCants, 223 So. 3d 913, 919 (Ala. 2016); Anderton, 164 So. 3d at 1102;

13

and <u>CitiFinancial Corp., L.L.C. v. Peoples</u>, 973 So. 2d 332, 340 (Ala. 2007).

"... It is true that the claims of a third-party beneficiary might not be subject to an arbitration provision if the scope of the provision is too narrow to encompass nonsignatories to the agreement containing the provision. <u>MTA</u>, 114 So. 3d at 32-33. But, as noted above, that issue -- whether a nonsignatory is included within the scope of an arbitration provision -- is an issue of arbitrability that may be delegated to the arbitrator to decide in the first place. See <u>Reedstrom</u>, 197 So. 3d at 976 ('[T]he question of whether the arbitration provision may be enforced against a nonsignatory ... ha[s] been delegated to the arbitrators, and the arbitrators, not the trial court, must decide those threshold issues.'), and <u>Anderton</u>, 164 So. 3d at 1102 ('[A]lthough the question whether an arbitration provision may be used to compel arbitration between a signatory and a nonsignatory is a threshold question of arbitrability usually decided by the court, here that question has been delegated to the arbitrator. The arbitrator, not the court, must decide that threshold issue.').

"The arbitration clause in this case, like the one in <u>Reedstrom</u>, specifically incorporates the AAA rules. Rule 7(a) states: 'The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, <u>scope</u>, or validity of the arbitration agreement or to the <u>arbitrability</u> of any claim or counterclaim.' (Emphasis added.) It is the language of the delegation provision in an agreement to arbitrate, here, by incorporating the AAA rule, that determines whether arbitrability is delegated to the arbitrator, not the language defining the <u>scope</u> of the arbitration provision itself.

"Warren Averett, citing Rule 7 of the AAA rules, <u>Reedstrom</u>, <u>Anderton</u>, and numerous other cases, argues that the arbitration clause, by incorporating the AAA rules, has delegated Wiggins's challenge to the scope of the arbitration

14

clause to the arbitrator to decide. Under our caselaw, as discussed above, that argument is correct.

"....

"Wiggins also contends that our line of cases recognizing the delegation to arbitrators of arbitrability determinations, such as in Managed Health Care, Bugs 'R' Us, Reedstrom, and Anderton, should be abandoned and urges the Court to adopt the rationale of the dissenting opinion of Justice Murdock in Anderton. As subsequent caselaw illustrates, we have consistently rejected this position. See Eickhoff, 265 So. 3d at 224 ('Numerous parties on appeal -- as well as even dissenting Justices on this Court -- have urged this Court to abandon this standard and, instead, to make the arbitrability determination in such cases itself; however, we have continually declined to do so. See, e.g., Anderton, 164 So. 3d at 1105 (Murdock, J., dissenting) ....').

"....

"The determination of whether Wiggins's claims are covered under the terms of the arbitration clause has been delegated to an arbitrator to decide. Based on the arguments before us, the trial court's order compelling arbitration is due to be affirmed."

307 So. 3d at 522-24.

Thus, under Alabama caselaw, "whether a nonsignatory is included within the scope of an arbitration provision … is an issue of arbitrability that may be delegated to the arbitrator to decide in the first place." Wiggins, 307 So. 3d at 523. See also Carroll v. Castellanos, 281 So. 3d 365 (Ala. 2019) (concluding that the issue whether claims involving

15

nonsignatories are arbitrable was delegated to an arbitrator to decide); Rainbow Cinemas, LLC v. Consolidated Constr. Co. of Alabama, 239 So. 3d 569 (Ala. 2017) (same); Federal Ins. Co. v. Reedstrom, 197 So. 3d 971 (Ala. 2015) (same); and Anderton v. The Practice-Monroe, P.C., 164 So. 3d 1094 (Ala. 2014) (same).  This caselaw controls the current case.  As in Wiggins and the other cases cited above, the arbitration provisions in this case delegate questions of arbitrability -- including whether claims against nonsignatories like the plaintiffs are arbitrable -- to an arbitrator to decide.  As in Wiggins and the other cases cited above, the arbitration provisions contain a clause incorporating AAA rules.  Under Rule 7(a), "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."  The arbitration provisions in this case also contain a delegation clause expressly stating that "[a]ll disputes concerning the arbitrability of any Claim or the enforceability or scope of this provision" shall be decided by arbitration.  Under either the incorporation clause (as was the case in Wiggins, Carroll, Rainbow Cinemas, Reedstrom, and Anderton) or the delegation clause, the arbitrability of the claims against

16

the plaintiffs is a threshold issue to be decided by an arbitrator. Thus, the circuit court erred by failing to grant the defendants' motion to compel arbitration.

Wiggins, Carroll, Rainbow Cinemas, Reedstrom, and Anderton are on point and demonstrate how this Court has viewed the nonsignatory issue before us today. None of the plaintiffs have asked us to overrule any of those cases. Only two of those cases are cited in the three briefs submitted by various groupings of the plaintiffs; the brief submitted by Eric McKinley and the Closing Agency and the brief submitted by Arc Realty and Dill briefly attempt to distinguish Reedstrom and Carroll from the current case. Those plaintiffs maintain that those two cases are distinguishable from this one because, they say, there was no dispute in those cases regarding the existence of a contract containing an arbitration provision. However, in all the above-cited cases, as in this case, there is no dispute about the existence of an arbitration provision in a contract signed by a party to the dispute; the issue concerns who must decide the arbitrability of disputes concerning nonsignatories. This Court has decided the issue before us now in Wiggins, Carroll, Rainbow Cinemas, Reedstrom, and Anderton. The plaintiffs essentially frame the

17

issue differently -- as one concerning the existence of an arbitration agreement between the parties to the dispute, and they argue that a court must decide that issue. However the issue is framed, the plaintiffs, to prevail, must overcome the established caselaw controlling this case, which they do not do.

We conclude that the circuit court's order denied the defendants' motion to compel arbitration and, thus, is an appealable order under Rule 4(d); therefore, we dismiss Smith's petition for a writ of mandamus. Whether the claims against the plaintiffs are arbitrable is an issue that must be decided by an arbitrator. The circuit court erred in staying the arbitration proceedings before the AAA and by failing to grant the defendants' motion to compel arbitration. Therefore, we reverse that order and remand the case for the circuit court to enter an order granting the defendants' motion to compel arbitration.

SC-2025-0231 -- PETITION DISMISSED.

SC-2025-0242 -- REVERSED AND REMANDED.

Stewart, C.J., and Shaw, Wise, Sellers, Mendheim, Cook, McCool, and Parker, JJ., concur.